**Gmail**

<span style="color:gray">Jeffrey D I &lt;jeffreydi@gmail.com&gt;</span>

## today's rule 26 (f) meeting
1 message

**Susan Christopher** &lt;treyhobbs@sbcglobal.net&gt;                    Wed, Apr 11, 2007 at 7:04 PM
To: jdi@alum.dartmouth.org, "Robin D. Dal Soglio" &lt;rdalsoglio@dm-lawfirm.com&gt;

Dear Mr. Isaacs,


Thank you for meeting with us today pursuant to rule 26(f) in an effort discuss initial disclosures, discovery, and settlement possibilities.


In summary of today's meeting, we have agreed to the following dates and items:


- In an effort to provide you with more time to gather your documents, witness lists, etc., we have stipulated that our initial disclosures do not have to be served on one another until May 11, 2007.  All required disclosures are listed in rule 26.


- We discussed settlement options.  Robin Dal Soglio will discuss your offer to dismiss all individual defendants upon USC's agreement to seal all of your disciplinary files with our client.  Further, you have requested that we speak with our client regarding a range of money that they would be agreeable to for settlement.  We have committed to providing you with a response to those requests by April 20, 2007.


- We will provide the first draft of our joint report and proposed discovery plan on May 11, 2007.  You will then have the opportunity to propose any changes to the report at that time.



If you have any questions or concerns, please contact us at any time.


Sincerely,



Susan Christopher, Attorney at Law

Dal Soglio & Martens LLP

<span style="color:#d2691e">19-cv-2011 Isaacs v. USC     Amended Complaint Exhibits Page 1</span>

 **Gmail**

<span style="color:gray">Jeffrey D I <jeffreydi@gmail.com></span>

---

## Third Amended Complaint
1 message

---

**rdalsoglio@dm-lawfirm.com** <rdalsoglio@dm-lawfirm.com>                Fri, Jun 29, 2007 at 11:28 AM
To: jdi@alum.dartmouth.org

---

June 29, 2007

<u>VIA FACSIMILE and E-MAIL</u>

Jeffrey David Isaacs
3553 West Chester Pike
PMB #177
Newtown Square, PA 19073
Facsimile: (310) 564-0432
Email: jdi@alum.dartmouth.org

Re:     <u>Jeffrey David Isaacs v. USC Keck School of Medicine, et al.</u>

Dear Mr. Isaacs:

     We have received your Third Amended Complaint.

     Pursuant to FRCP 15(a), you are not permitted to file another amended complaint without first filing a motion seeking leave of the court to do so.  Given that we have been served with no such motion, we demand that you withdraw this Third Amended Complaint.  Please provide written confirmation no later than Monday, July 2, at 12:00 p.m. PDT, that you will be withdrawing the Third Amended Complaint (at least until such time as you receive leave of court to file it) and that Defendants therefore do not to file any response at this time.

     If you fail to withdraw the Third Amended Complaint, please be advised that Defendants will seek sanctions against you for their unnecessarily incurred legal fees.

     We look forward to your prompt response in this matter.

                                        Very truly yours,

                                        Robin D. Dal Soglio

Robin D. Dal Soglio
**Dal Soglio & Martens LLP**
27240 Turnberry Lane

19-cv-2011 Isaacs v. USC     Amended Complaint Exhibits Page 2

Tracking Details

| | |
|---|---|
| **Opened** | |
| Opened | 10-Jan-06 at 19:13:38pm (UTC -5:00) - 1hour25mins20secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | b12-arbiter-b.net.nih.gov (128.231.88.6:60446),fernwood-arbiter-b.net.nih.gov (128.231.88.7:64823) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727) |
| Last log | No more activity after 10-Jan-06 at 19:19:24pm (UTC -5:00) - Log data indicates email was read for at least 5mins46secs (approx.) |

| | |
|---|---|
| **Forwarded** | |
| Opened | 10-Jan-06 at 19:36:18pm (UTC -5:00) - 1hour48mins after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:3058) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| Last log | No more activity after 10-Jan-06 at 19:37:46pm (UTC -5:00) - Log data indicates email was read for at least 1min28secs (approx.) |

| | |
|---|---|
| **Forwarded** | |
| Opened | 10-Jan-06 at 19:38:42pm (UTC -5:00) - 1hour50mins24secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |

-38-

19-cv-2011 Isaacs v. USC Amended Complaint Exhibits Page 3

| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:3063) |
| Browser | used by recipient: Eudora |
| Last log | No more activity after 10-Jan-06 at 19:49:02pm (UTC -5:00)   -   Log data indicates email was open for at least 10mins20secs (approx.) |

| **Re-opened (by earlier reader #1)** | |
| Opened | 10-Jan-06 at 21:49:36pm (UTC -5:00)   -   4hours1min18secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | b12-arbiter-b.net.nih.gov (128.231.88.6:38907),fernwood-arbiter-b.net.nih.gov (128.231.88.7:34903) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322; .NET CLR 2.0.50727) |
| Last log | No more activity after 10-Jan-06 at 21:57:10pm (UTC -5:00)   -   Log data indicates email was read for at least 7mins34secs (approx.) |

| **Re-opened (by earlier reader #2)** | |
| Opened | 11-Jan-06 at 00:14:41am (UTC -5:00)   -   6hours26mins23secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | vpn-052-038.usc.edu (128.125.52.38:4766) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |

-39-

19-cv-2011 Isaacs v. USC Amended Complaint Exhibits Page 4

| | |
|---|---|
| **Re-Opened (by earlier reader #2)** | |
| Opened | 11-Jan-06 at 09:38:31am (UTC -5:00)   -   15hours50mins13secs after sending |
| Location | San Juan, Puerto Rico (86% likelihood) |
| Opened on | 207.166.116-82.isla.net (207.166.116.82:63526) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |

| | |
|---|---|
| **Re-Opened (by earlier reader #2)** | |
| Opened | 11-Jan-06 at 16:12:42pm (UTC -5:00)   -   22hours24mins24secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:4212) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1) |
| Last log | No more activity after 11-Jan-06 at 16:15:04pm (UTC -5:00)   -   Log data indicates email was read for at least 2mins22secs (approx.) |

| | |
|---|---|
| **Re-opened (by earlier reader #3)** | |
| Opened | 11-Jan-06 at 16:15:07pm (UTC -5:00)   -   22hours26mins49secs after sending |
| Location | Los Angeles, California, United States (86% likelihood) |
| Opened on | zni100-1.hsc.usc.edu (128.125.75.181:4227) |
| Browser | used by recipient: Eudora |

-40-

19-cv-2011 Isaacs v. USC Amended Complaint Exhibits Page 5

| | |
|---|---|
| **Forwarded** | |
| Opened | 28-Feb-06 at 18:53:08pm (UTC -5:00)   -   49days1hour4mins50secs after sending |
| Location | Bethesda, Maryland, United States (86% likelihood) |
| Opened on | fernwood-arbiter-b.net.nih.gov (128.231.88.7:9652),b12-arbiter-b.net.nih.gov (128.231.88.6:10654) |
| Language | of recipient's PC: en-us (English/United States) |
| Browser | used by recipient: Moz/4.0 (MSIE 6.0; WinNT 5.1; SV1; .NET CLR 1.1.4322) |

| | |
|---|---|
| **Summary   -   as at 22-Sep-07 at 12:40:11pm (UTC -5:00)   -   619days18hours51mins53secs after sending** | |
| Total | Opened 9 times by 4 readers |
| Reader #1 | Opened 2 times for 13mins20secs total |
| Reader #2 | Opened 4 times for 3mins50secs total |
| Reader #3 | Opened 2 times for 10mins20secs total |
| Reader #4 | Opened 1 time |

-41-

19-cv-2011 Isaacs v. UofC Amended Complaint Exhibits Page 6

Gmail - Isaacs v. USC, et al.                                                                    1/22/19, 4:42 AM

 Gmail

Jeffrey D I <jeffreydi@gmail.com>

## Isaacs v. USC, et al.
1 message

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                    Tue, Jul 3, 2007 at 6:37 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Mr. Isaacs,

As you know, I represent the defendants in your lawsuit.  I have previously advised you that your communications to
any and all of the defendants, including the University of Southern California, need to be directed to me and
not directly to the University, including the President's office.  If you continue to direct communications regarding the
lawsuit directly to the University, we will seek appropriate sanctions.
I also am not sure what you mean by whether I represent Mr. Baughman "during discovery."  I have already appeared
on his behalf and, therefore, represent him for purposes of this litigation.

I have confirmed with the University that they are willing to enter into an agreement sealing your KSOM disciplinary
records in exchange for a complete dismissal of all individual defendants.  I will draft the appropriate documentation
and forward it to you for your review next week.

With respect to your offer to settle the rest of the lawsuit against the University for $645,000, the University rejects
the offer.  Moreover, as I mentioned to you on June 4, the University is not willing to discuss settlement in that
approximate range.

Sincerely,

Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

19-cv-2011 Isaacs v. USC      Amended Complaint Exhibits Page 7

 Gmail

## Re: Dismissal of CV-06-3338

1 message

---

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                    Wed, Jul 11, 2007 at 5:15 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org

Mr. Isaacs:

As discussed, I will convey this offer to my clients and get back to you.

Robin

> ----- Original Message -----
> **From:** Jeffrey D. Isaacs 99
> **To:** rdalsoglio@dm-lawfirm.com
> **Sent:** Wednesday, July 11, 2007 1:52 PM
> **Subject:** Dismissal of CV-06-3338
>
> Dear Ms. Dal Soglio:
> As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in
> getting rid of this action.
> Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition
> and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC
> dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden
> on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been
> fortunate enough to receive a second chance; to pursue this opportunity is only possible with both the financial
> liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway
> train' and hope your client can arrive at the same rational opinion.
> This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential
> under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept
> reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
> Regards,
> Jeffrey Isaacs

 **Gmail**

<span style="color:gray">Jeffrey D I &lt;jeffreydi@gmail.com&gt;</span>

## Re: Settlement follow-up
1 message

---

**Robin D. Dal Soglio** &lt;rdalsoglio@dm-lawfirm.com&gt;                 Tue, Jul 17, 2007 at 5:50 PM
Reply-To: "Robin D. Dal Soglio" &lt;rdalsoglio@dm-lawfirm.com&gt;
To: Jeffrey.Isaacs@alumni.insead.edu

Mr. Isaacs,

Attached please find the proposed settlement documentation regarding the release of the individual defendants.  If the document is acceptable, please sign and return the original to me.  Otherwise, let me know if you have questions or comments.  I look forward to hearing from you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

> ----- Original Message -----
> **From:** Jeffrey D. Isaacs 99
> **To:** rdalsoglio@dm-lawfirm.com
> **Sent:** Monday, July 16, 2007 9:36 AM
> **Subject:** Settlement follow-up
>
> Dear Ms. Dal Soglio:
> Could you please confirm via email or fax the status of the partial settlement papers you said you were sending on July 3rd? Also, please confirm that your client has seen and has rejected the most recent global settlement offer. Again, please confirm this by email or fax as soon as possible.
> Regards,
> Jeffrey Isaacs

---

 **Isaacs Settlement Agreement re Individual Defs.DOC**
59K

<span style="color:#e06000">19-cv-2011 Isaacs v. USC       Amended Complaint Exhibits Page 9</span>

 Gmail                                                    Jeffrey D I <jeffreydi@gmail.com>

## Re: CV 06-3338 remaining claims

1 message

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                Tue, Sep 4, 2007 at 1:50 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: JDI <jeffreydi@gmail.com>, treyhobbs@sbcglobal.net

Mr. Isaacs:

I am in receipt of the signed Settlement Agreement for your claims against the individual defendants.  I will prepare the proper Dismissal form for your signature, and then I can file it for you if you wish.  I will forward it shortly.

I will discuss your offer to mediate the remaining claims with my client and get back to you.

Robin Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

> ----- Original Message -----
> **From:** JDI
> **To:** rdalsoglio@dm-lawfirm.com ; treyhobbs@sbcglobal.net
> **Sent:** Sunday, September 02, 2007 1:30 PM
> **Subject:** CV 06-3338 remaining claims
>
> Dear Ms Dal Soglio:
>
> I would like to know if your client is still interested in mediation for the remaining claim against USC. You had mentioned this as a possibility over the phone a month or two ago. My goal for the mediation would be to settle at an expungement, withdrawal, or withdrawal for medical reasons. I would be willing to defer discovery,  if the Court allows this, while a mediation conference is pending. Please let me know as soon as possible. I also left you voicemail regarding the papers for dismissal with prejudice re the settlement agreement. Please let me know if you will be providing these soon, otherwise, it seems that I would be able to file them on my own unless you indicate otherwise.
>
> Regards,
> Jeffrey Isaacs
>
> **ReadNotify.com E-mail Posting-Time Digital Certificate.**   On Sun, 02 Sep 2007 20:30:51 GMT the above e-mail arrived from jeffreydi@gmail.com for rdalsoglio@dm-lawfirm.com, was assigned sequence number #7027937 and ReadNotify reference **e1591c84c4efad714befad461ddbe65e**, digitally signed, and immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time they were dispatched. The following signature is now published online; to view it, verify it, or for more information, please visit www.ReadNotify.com.
>
> -----BEGIN PGP SIGNATURE-----
> Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2)

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 10

 **Gmail**

Jeffrey D I <jeffreydi@gmail.com>

## Re: Dismissal of CV-06-3338
1 message

**Robin D. Dal Soglio** <rdalsoglio@dm-lawfirm.com>                         Wed, Jul 11, 2007 at 6:02 PM
Reply-To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>
To: jdi@alum.dartmouth.org
Cc: Susan Christopher <dmattorney@sbcglobal.net>

Mr. Isaacs,

I have communicated your most recent offer to USC and, as I expected, they have rejected it.  They also are not
interested in making a counter-offer at this time, as it appears that we have vastly diverging views about the value of
your case.  The defendants and I remain confident that we will prevail in this matter.

Sincerely,
Robin D. Dal Soglio

Robin D. Dal Soglio
**DAL SOGLIO & MARTENS LLP**
27240 Turnberry Lane, Suite 200
Valencia, CA  91355
Tel: (661) 362-0736
Fax: (661) 244-4942

----- Original Message -----
**From:** Jeffrey D. Isaacs 99
**To:** rdalsoglio@dm-lawfirm.com
**Sent:** Wednesday, July 11, 2007 1:52 PM
**Subject:** Dismissal of CV-06-3338

Dear Ms. Dal Soglio:
As we discussed, I would like to make a global settlement offer to your client. I hope your client shares my interest in
getting rid of this action.
Upon acceptance of this offer, your client will both clear and seal my record, and reimburse me $100,000 for tuition
and legal expenses. Subsequently and promptly, I will provide you with written authorization to file in the USDC
dropping this case. By completely sealing and clearing my record at USC, your client will be removing any burden
on me to disclose these events in future career endeavors. I believe this makes everyone better off. I have been
fortunate enough to receive a second chance; to pursue this opportunity is only possible with both the financial
liquidity and the clear record provided by this settlement. I feel that whatever happened at USC was a 'runaway
train' and hope your client can arrive at the same rational opinion.
This is a formal, active offer and expires at 5 PM PST Thursday, July 12th. This offer is privileged and confidential
under all applicable laws with regards to admission of evidence or settlement offers. Both parties agree to accept
reasonable, standard terms relating to confidentiality and non-disclosure, to be drafted after acceptance of this offer.
Regards,
Jeffrey Isaacs

 **Gmail**

## (no subject)
1 message

**JDI** <jeffreydi@gmail.com>                                    Wed, Oct 17, 2007 at 7:14 PM
To: MPayne@phslegal.com

Hi Michael,

Just to update you, I replied to the USC lawyer about mediation and she's ignored the email and two phone calls. I suspect that she may just be offering mediation to ride out the clock on discovery.

To summarize, I think it would be helpful to have an attorney step in at this point to:

- Get a copy of the settlement agreement they seem to be dishonoring, as a prerequisite to any mediation talks

- See if the mediation options they propose are in good faith

- Get a "stay" on discovery if mediation is going to proceed, if possible

If they don't seem to be cooperative, then I guess I'd want to know what options there are with the court and subpoenas, etc

Thanks,
Jeff

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 12

 Gmail

## mediation

1 message

**JDI** <jeffreydi@gmail.com>                                          Fri, Oct 26, 2007 at 9:25 AM
To: MPayne@phslegal.com

Hello Michael,

Yesterday Robin Dal Soglio's (USC's lawyer) office called me to set up mediation. However, they apparently have
chosen a mediator, whereas initially they told me they would suggest a few. I had mentioned using the court's
mediation program, and they seemed to ignore this.  not sure if you have wrapped up the case you were working on -
when you have a chance i would appreciate your input on how i should proceed with this.

Thanks,
Jeff

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 13

# Re: mediation ⊃

 

**jeffreydi@gmail.com**                                                    Nov 7, 2007, 9:07 AM  ☆  ↩
to Michael ▾

Hi Michael,

The total loans USC authorized the bank to issue to me as "cost of
attendance" were $63,064. These were three separate loans, one at no
interest ($8500), one at 4.5% ($30,000) and the remainder was a
private loan at 9%

The tuition for the year I attended was $40,322.

I was also thinking about USC's claim that expunging my record might
be logistically difficult. I wanted to tell you that when I went out
to the Court for the case scheduling conference, the judge almost
laughed when he heard all I wanted was my record cleared. I don't know
if the court can play a role in a possible settlement, but if they
can, it would seem that this judge would have no problem signing off
on an order that clears/expunges my record. So if this is right, it
would seem an expungement and refund of tuition should be rather
simple for USC - if they want to settle.

Regards,
Jeff

 **Gmail**

Jeffrey D I <jeffreydi@gmail.com>

## RE: mediation
1 message

**Michael Payne** <MPayne@phslegal.com>                                    Wed, Oct 31, 2007 at 3:43 PM
To: JDI <jeffreydi@gmail.com>
Cc: wlisaacs@aol.com

Jeff -

I just had a lengthy discussion with Robin and she seemed relieved to be
speaking to an attorney (she meant no offense to you).  We discussed the
case in general terms and I reminded her that there are two sides to
every story.  I further pointed out that, in my view, the University
handled the situation very badly.

In any event, without attempting to recall the entire conversation, I
told her that I would represent you at the mediation, but that a
negotiated settlement short of mediation was preferable.  She agreed and
asked me what I had in mind.  I told her that I would recommend that you
accept a settlement that expunged your record of admission and
attendance, together with a refund of your tuition.  Her reply was that
she could probably get the University to accept your voluntary
withdrawal, but she thought that the University would not agree to any
significant monetary payment.

I told her that a voluntary withdrawal was something that could be
discussed, but that an expungement was what I was really after.  I also
told her that I saw no reason why such a wealthy University would need
to retain your money under either a withdrawal or an expungement
arrangement.  She promised to run it by the University and she explained
that getting anything approved in the University's administrative system
is difficult.  In fact, she stated that she would only pursue the
expungement idea if I assured her that it would lead to a settlement.  I
gave her that assurance, provided that the tuition was refunded as well.

We decided to put the mediation aside for the moment, and I also told
her that she did not need to respond to any further discovery requests
at this time.  Is there a Court ordered discovery deadline?  If so,
please let me know and I will arrange for a stay pending the completion
of settlement negotiations.

I also asked her for a copy of the settlement agreement and she promised
to e-mail it to me.  She swears that she has already mailed it to you
three times.  What address does she have for you?

I also need to know how much you paid to the University, whether by
direct payment or loan.  If we can get all or part of that back, coupled
with an expungement of your record, I would recommend that you accept
it.  Short of that, since it appears that the disciplinary record has
been sealed, a voluntary withdrawal would also probably work.

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 15

 **Gmail**

<span style="color:gray">Jeffrey D I &lt;jeffreydi@gmail.com&gt;</span>

## RE: Isaacs v. USC
1 message

**Michael Payne** <MPayne@phslegal.com>                              Mon, Dec 31, 2007 at 11:53 AM
To: rdalsoglio@dm-lawfirm.com

Hi Robin -

Thank you for responding and I am sorry about all of the problems you have been having lately.  I will be back in my office on Friday, the 4th, and I would like to speak to you at that time.  It seems to me that a wealthy university like USC shouldn't need to retain money for schooling that it did not provide.  Please remember that Jeff did not attend any second semester classes.  There is a punitive aspect to the University's retention of money under those circumstances that is not warranted.

The "cleaning up" of the record is important, as well, although I would like to go even further than a voluntary withdrawal.  In any event, these are things that we can discuss on Friday.  If a mediator can help to bring this to a conclusion more quickly, I am certainly willing to consider that possibility.  I really believe that this is a case that can be settled with just a little bit more flexibility on the University's part.

Michael

---

**From:** rdalsoglio@dm-lawfirm.com [mailto:rdalsoglio@dm-lawfirm.com]
**Sent:** Mon 12/31/2007 10:55 AM
**To:** Michael Payne
**Cc:** rdalsoglio@dm-lawfirm.com
**Subject:** Re: Isaacs v. USC

Hi Michael -- I'm sorry that I haven't gotten back to you sooner.  Please be assured that I, too, have approached our discussions with sincere intentions.  It has simply been an unusually busy year-end, together with my daughter's accident and being evacuated from my home due to fires ....  I do appreciate your patience.  I am out of the office until this Thursday, Jan. 3, but am checking in remotely this morning.

I have spoken to the client but at this time their position remains unchanged.  They are willing to work with Mr. Isaacs towards a resolution that includes some mechanism to "clean up" his University record, i.e., perhaps to indicate a voluntary withdrawal.  But they are not willing to make any substantial monetary payment.  We obviously disagree that the University's conduct was outrageous, but are confident that it was imminently reasonable.  If you think that an in-person mediation might be useful to explain your position, USC is willing to consider it.

As for the discovery deadline, I am away from the office until Thursday and don't have the deadlines in mind.  I will have to check the file and my office calendar when I return to work on Thursday.  Perhaps we can speak on Thursday afternoon or Friday morning, and address your concerns at that time.  Are you available?

Robin

-----Original Message-----
From: Michael Payne [mailto:MPayne@phslegal.com]
Sent: Monday, December 31, 2007 01:35 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC

Robin -

In your last message you stated that you would have a response to me by Monday, December 31, but I have not heard from you. I approached you with a settlement offer in good faith and I hope that I did not misjudge your intentions. You sounded sincere in your willingness to work toward a resolution. Your silence is both puzzling and troubling, particularly since you ignored my comment about the discovery deadline in your December 11 response.

If this case cannot be settled along the lines I suggested, I think that the University will be making a mistake. The more I learn about what happened, the more outrageous the University's conduct becomes. If the only alternative is to take this case to trial, so be it.

I would appreciate a response this week and I wish you a Happy New Year.

Michael

_____

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Thu 12/13/2007 6:30 PM
To: Michael Payne
Subject: Re: Isaacs v. USC

Michael -- I am meeting with the client tomorrow and will have a response to you by Monday. Robin

----- Original Message -----
From: Michael Payne <mailto:MPayne@phslegal.com>
To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>
Sent: Tuesday, December 11, 2007 12:11 PM
Subject: RE: Isaacs v. USC

Robin -

I hope that your daughter is okay and I certainly understand if you have been occupied with more important matters. As you know, there is a fast approaching discovery deadline. If we cannot settle the case, I need to associate with local counsel in order to proceed. I had hoped that this would not be necessary given my client's very reasonable settlement offer.

Please let me know where we stand on this. If the case is not going to be settled, I need to know whether you will join in a request for an extension of the discovery deadline.

Michael

_____

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 17

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Monday, November 26, 2007 7:53 PM
To: Michael Payne
Subject: Re: Isaacs v. USC


Michael -- I do apologize for the delay in getting back to you. My 7-year-old daughter was involved in a very serious accident on Halloween, and I have not had the chance to follow up on this. I will speak with my client and get back to you this week. Robin

----- Original Message -----

From: Michael Payne <mailto:MPayne@phslegal.com>

To: Robin D. Dal Soglio <mailto:rdalsoglio@dm-lawfirm.com>

Sent: Tuesday, November 20, 2007 11:43 AM

Subject: FW: Isaacs v. USC


Robin -


Would you please let me know the status of the settlement offer I made on November 7? I understand that there is a discovery cutoff at the end of December.


Michael


_____


From: Michael Payne
Sent: Wednesday, November 07, 2007 11:37 AM
To: 'Robin D. Dal Soglio'
Subject: RE: Isaacs v. USC


Robin -


As a follow-up to our recent conversation about how the case can be settled, I have learned that the total loans USC authorized the bank to issue to Jeff as "cost of attendance" amounted to $63,064. There were three separate loans, one at no interest ($8500), one at 4.5% ($30,000) and the remainder was a private loan at 9%. The tuition for the first year was $40,322.

In order to settle the case, I propose that the University refund the tuition in the amount of $40,322, and Jeff will absorb the $23,000 in additional costs. This should not be too difficult for the University to justify since Jeff was not even permitted to attend any of the second semester classes. It seems to me that the University will survive without Jeff's money.

A refund is also consistent with the second part of the offer - that Jeff's record of admission and attendance be expunged. In other words, if Jeff never attended there would obviously not have been a payment of tuition. Given everything that happened, and the fact that each side must bear some responsibility, that would seem to me to be a fair result. I also believe that if the University is reluctant to agree to expunge the record, the Court might be willing to assist us by issuing an order in connection with a settlement. In other words, if the Judge understands that the case can be resolved by expunging the record and by issuing a tuition refund, my guess is that he will do whatever he can to facilitate the settlement.

In any event, you appropriately asked me whether the case could actually be settled on this basis given the considerable effort it will take on your part to obtain the University's approval. I want to confirm that my client will agree to a settlement on the terms I have proposed.

I appreciate your courtesy and please feel free to contact me for further discussion.

Michael

_____

From: Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
Sent: Wednesday, October 31, 2007 5:44 PM
To: Michael Payne
Subject: Isaacs v. USC

Hi Michael,

It was a pleasure speaking with you. I do look forward to working with you towards a resolution of this matter in the best interests of all parties. Towards that end, attached please find a copy of the fully executed Settlement Agreement, which led to the dismissal of the individual defendants.

Robin

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 19

 **Gmail**

## Discussion with Robin
1 message

**Michael Payne** <MPayne@phslegal.com>                                    Tue, Jan 8, 2008 at 4:47 PM
To: JDI <jeffreydi@gmail.com>
Cc: webhost@webhosths.com

Jeff –


USC is not willing to consider a refund of any amount and they have concluded that they cannot, as a matter of
University policy or educational ethics, expunge a record.  They are willing to change your record to reflect a voluntary
withdrawal, but that would be apparently be effective at the end of the first semester.  Robin is having a difficult time
understanding why an expungement is significantly different from a voluntary withdrawal and I, of course, am not in a
position to make it clear to her.  Robin's position is that if you voluntarily withdraw from the University, and you don't
tell anyone that you attended the University, there will never be a reason for anyone to check with USC.  She may be
correct.


The University is willing to participate in a mediation where the issue of a tuition refund would still be on the table, and
the offer of a voluntary withdrawal would remain on the table, as well.  Although I can make a passionate and well-
reasoned presentation on your behalf, there is no way of telling how a mediator will react to the University's
presentation, which will undoubtedly not cast your actions in the most favorable light.


The more I think about it, if you decide to mediate we should do it in person.  It will be difficult for me to do the kind of
wheeling and dealing I would need to do with the mediator on the telephone.  The issue becomes whether you believe
that you can do that much better as the result of a mediation than what is being offered now.  Of course, you can
proceed with litigation, but then you will need to devote a number of trips to LA and an enormous time to an effort that
could end up in a loss of the case.  That would definitely be worse than what is being offered.


My advice is to either take the offer of a voluntary withdrawal and put this unhappy matter behind you, or go for the
mediation.  I can help you with and represent you at the mediation, but since I am not licensed to practice law In
California I cannot take over the litigation.  In any event, I think that litigating the case any further would be a big
mistake.  This is the kind of a decision that you must make without emotion and in consideration of everything that is
involved.  If the fact that you failed to disclose that you attended USC could come back to haunt you later, that
problem will remain even if you win the lawsuit (i.e., you will still have failed to disclose that you attended USC).  It
may actually be easier to explain why you failed to disclose you attendance at USC if you voluntarily withdrew.  You
could simply say that it was an unhappy experience, that you made a mistake, and that you wanted to put it behind
you.


Please let me know what you would like to do.  I feel that my discussions with Robin have been exhausted.

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 20

 **Gmail**

Jeffrey D I <jeffreydi@gmail.com>

## FW: Isaacs v. USC
1 message

**Michael Payne** <MPayne@phslegal.com>                                        Tue, Jan 29, 2008 at 1:46 PM
To: jeffreydi@gmail.com
Cc: wlisaacs@aol.com

**From:** Robin D. Dal Soglio [mailto:rdalsoglio@dm-lawfirm.com]
**Sent:** Tuesday, January 29, 2008 1:40 PM
**To:** Michael Payne
**Subject:** Re: Isaacs v. USC

Michael --

Unfortunately, after extensive discussion and research, the University has determined that it is not able to alter school records along the lines of our discussions.  However, pursuant to the earlier settlement with Mr. Isaacs in connection with his dismissal of the individual defendants, USC will not release any information concerning Mr. Isaacs' disciplinary or academic record without written authorization from him.

In a showing of good faith, the USC is willing to offer Mr. Isaacs $5,000 for a complete dismissal of the lawsuit, with prejudice, and a full general release.

Robin

----- Original Message -----
**From:** Michael Payne

**To:** Robin D. Dal Soglio

**Sent:** Tuesday, January 29, 2008 7:14 AM

**Subject:** RE: Isaacs v. USC

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 21

Robin –


Your failure to follow-up on our settlement discussions, as you promised to do, and your failure to even reply to my e-mail message below are discourteous and unprofessional.  I apparently misjudged your intentions and your willingness to negotiate a reasonable settlement.  I thought that I could bring the litigation to an amicable conclusion, but it is obviously impossible for me to do so without the cooperation of opposing counsel.


The settlement offer I made in our recent discussion will be off the table at the end of this week, and the litigation will then resume.  I assume that you will join Jeff in a motion to extend discovery and that you will respond to his outstanding discovery requests in an expeditious manner.


Michael

---

**From:** Michael Payne
**Sent:** Wednesday, January 23, 2008 4:06 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** Isaacs v. USC


Robin –


I really have tried to be reasonable and to work with you to achieve a reasonable resolution of this case.  Unfortunately, your lack of response, even when it seemed like there was no impediment to a settlement, is mystifying.  I anticipated receiving word from you after our last discussion where a minor point, the granting of a voluntary withdrawal after the first semester, was the last remaining issue.  Of course, the possibility of mediating the issue of a tuition refund is also on the table.


At this point, I would appreciate if you would tell me, once and for all, whether the settlement I have proposed is acceptable.  If it is not, the outstanding discovery request must be responded to and the litigation must go forward.  If that happens, since I am not admitted to practice in California, my client will either continue to go forward pro se, or local counsel will be engaged.  Does the University really want this case to go forward when it can be settled so easily?


I would appreciate a timely response.


Michael

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 22



Jeffrey D I <jeffreydi@gmail.com>

## Isaacs v. USC

1 message

**Michael Payne** <MPayne@phslegal.com>                    Wed, Jan 30, 2008 at 4:24 PM
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Robin –


I interpret your failure to respond to my message yesterday as a refusal to negotiate any further.  Quite frankly, I now understand why Jeff was so frustrated by your slow and untimely responses.  If that is simply your negotiating style when dealing with pro litigants or opposing counsel, it is unprofessional.  In an event, I am withdrawing from any further involvement.  The only thing that remains is that Jeff needs to know whether you will join in a request for an extension of time to complete discovery.


If you do not respond positively, or promptly, I will assist Jeff to present the matter to the Court.


Michael


---

**From:** Michael Payne
**Sent:** Tuesday, January 29, 2008 4:12 PM
**To:** 'Robin D. Dal Soglio'
**Subject:** RE: Isaacs v. USC


Robin –


I am a little confused.  I interpret your message to mean that the University will not fix a date of withdrawal at the end of the first semester, as I suggested.  Are you still offering a "voluntary withdrawal?"  If so, might it be possible to settle the case based upon a voluntary withdrawal coupled with mediation on the tuition refund issue?  I don't want to go back to Jeff without a full, and clear, understanding of what the University is actually offering.


You need to give me something to work with if this case has any chance of settling.

 **Gmail**

Jeffrey D I <jeffreydi@gmail.com>

## Re: CV 06-3338 remaining claims
1 message

**Jeffrey D. Isaacs** <jeffrey.isaacs@alumni.insead.edu>                     Wed, Jan 30, 2008 at 5:50 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Michael Payne <MPayne@phslegal.com>

Ms. Dal Soglio:

On September 5th, you confirmed that you would look into the
possibility of mediating this case. There was no ambiguity (see
attached email) that such a mediation session would concern further
cleaning my academic record, as opposed to monetary settlement. In
mid-October, you answered in the affirmative regarding this mediation,
and asked to schedule it along with my local attorney, Michael Payne.
In the meantime, on September 22nd you were served via a digitally
encrypted and tracked PDF file containing the Second Request for
Documents. Previously, you consented to this form of electronic
service. Furthermore, you signed for the paper courtesy copy I sent to
your Valencia office. You have not responded to the Second Request for
Documents, and you recently made a settlement offer (which baffles me)
of $5000, which was against our prior agreement to mediate a
withdrawal or expungement.

When Mr. Payne contacted you in late October to arrange the mediation,
you were already in default on responding to my discovery request.
Believing your intent to schedule this mediation was sincere, I didn't
raise the discovery issue with you. Obviously this would be a moot
point, had the case settled.

It also appears you made a verbal offer last week to Mr Payne to
permit a voluntary withdrawal, then retracted this offer?

Where is your response to my second request for documents? Given that
this is clearly your mistake and/or deceptive strategy, that is, the
mediation with a withdrawal on the table that you promised never
existed, will you draft the paperwork for an enlargement of time? Your
deadline for the discovery production is seriously past due, and this
is certainly not the first time you have ignored the Federal Rules.

Please respond by February 1st, in full to my concerns to avoid
involvement with the Court. By in full, I mean your written and
complete response to the past-due Second document request, along with
a stipulation that you will draft the enlargement of time motion,
which is necessary due to either your intentional misrepresentation or
unintentional 'mistake.'

Regards,
Jeffrey D. Isaacs

On Sep 5, 2007 3:20 PM, Robin D. Dal Soglio <rdalsoglio@dm-lawfirm.com> wrote:

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 24

 Gmail

Jeffrey D I <jeffreydi@gmail.com>

## Re: Settlement Offer

1 message

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                                  Fri, Mar 14, 2008 at 6:09 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com

That is correct.  The terms of such a settlement would represent a
total and full cancellation of tuition consideration previously paid,
less reasonable admin charges.

As part of this agreement, I would like a statement (which can be
sealed) that neither party is required to disclose my enrollment at
USC because the enrollment contract was effectively cancelled.  This
is the slight variation from the currently sealed record that permits
me to accept a settlement around $20,000 ,  as it reduces/eliminates
potential career/financial risk down the road.

Hence, this settlement would not seek any revised
transcripts/withdrawal/expungement, it would simply be an agreement of
full non-disclosure and tuition consideration cancellation.


On Fri, Mar 14, 2008 at 5:38 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
>
>
>
> Dear Mr. Isaacs:
>
>
>
> I want to make sure I understand before I communicate your offer to USC.
> Are you suggesting that the settlement would be somehow referred to as a
> "refund of tuition, less administrative charges."  The documentation would
> then include an agreement between the parties as to what the net amount of
> the settlement would be.  Is that what you are saying?
>
>
>
> Robin D. Dal Soglio
>
>
>
>
>
> From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> Sent: Friday, March 14, 2008 12:43 PM
> To: rdalsoglio@dm-lawfirm.com

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 25

> Subject: Re: Settlement Offer
>
>
>
>
>
> Ms Dal Soglio:
>
>
>
>
> No, I did receive and understand your email yesterday. Perhaps you
>
> didn't understand that I was proposing a lower Net Settlement amount,
>
> after reimbursement of administrative expenses for USC. In other
>
> words, this is an accounting mechanism whereby USC would refund my
>
> tuition, but only pay a settlement in the $10-$20,000 range. This
>
> would seemingly satisfy the requirements of all parties (i.e. limiting
>
> disclosure liability and simultaneously settling the case in a lower
>
> range of $20,000 or less.
>
>
>
>
> Regards
>
> Jeffrey Isaacs
>
>
>
>
>
>
>
>
> On Fri, Mar 14, 2008 at 3:20 PM, Robin Dal Soglio
>

 Gmail

Jeffrey D I <jeffreydi@gmail.com>

## Re: Rule 37 Conference
1 message

**JDI** <jeffreydi@gmail.com>                                              Thu, Mar 20, 2008 at 1:52 PM
To: rdalsoglio@dm-lawfirm.com

i will call in about 15 minutes

On Thu, Mar 20, 2008 at 1:51 PM,  <rdalsoglio@dm-lawfirm.com> wrote:
> Jeff - I am still available and will be until 1:00 my time. Please call at your convenience.
>
>  Robin D. Dal Soglio
>
> Sent from my Verizon Wireless BlackBerry
>
>  -----Original Message-----
>
> From: rdalsoglio@dm-lawfirm.com
>
> Date: Thu, 20 Mar 2008 03:11:10
> To:"JDI" <jeffreydi@gmail.com>
> Subject: Re: Rule 37 Conference
>
>
> 10:00 am is fine.
>
> Sent from my Verizon Wireless BlackBerry
>
>  -----Original Message-----
>
> From: JDI <jeffreydi@gmail.com>
>
>  Date: Wed, 19 Mar 2008 22:54:54
>  To:rdalsoglio@dm-lawfirm.com
>
> Subject: Re: Rule 37 Conference
>
>
>
>       on-behalf-of jeffreydi@gmail.com; Thu Mar 20 02:54:57 2008 Received: from rv-out-0910.google.com (rv-out-0910.google.com [209.85.198.191])      by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id m2K2suHV014253      for ;
Thu, 20 Mar 2008 02:54:57 GMT Received: by rv-out-0910.google.com with SMTP id c24so334081rvf.47 for ; Wed,
19 Mar 2008 19:54:54 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256; c=relaxed/relaxed; d=gmail.com; s=beta;
h=domainkey-signature:received:received:message-id:date:from:to:subject:in-reply-to:mime-version:content-type:
content-transfer-encoding:content-disposition:references; bh=m85IhjE1JynaogyvAyy2HcGHNM3rlA
QT6HfRMBXyUog=; b=oXQ9RNRQPqKM4sXqKILyu/ayUG9hLJ2QwSaJrBlbyhZaP5sG2m+
bWRw47gX8l6AbDkxN11kdXeq788X5ZKY2LstksPyrL8eFfL3sQ83qtnpk27VMnhj4n3LnuINB9T2I/BvAL+
sMP9R8J84exxncB0zwxcPM91uJhsGTVRFrz1w= Received: by 10.141.123.4 with SMTP id a4mr551707rvn.172.
1205981694592; Wed, 19 Mar 2008 19:54:54 -0700 (PDT) Received: by 10.141.53.13 with HTTP; Wed, 19 Mar 2008
19:54:54 -0700 (PDT) Message-ID: Date: Wed, 19 Mar 2008 22:54:54 -0400 From: JDI To: rdalsoglio@dm-

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 27

lawfirm.com Subject: Re: Rule 37 Conference In-Reply-To: References:    Reply-To: JDI MIME-Version: 1.0
Content-Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: quoted-printable Disposition-Notification-
To: "them" X-Confirm-Reading-To: jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Return-Receipt-To:
jeffreydi@gmail.com.kdsbzmpgxtnxyac.emsvr.com Notice-Requested-Upon-Delivery-To: jeffreydi@gmail.com.
kdsbzmpgxtnxyav.emsvr.com Errors-To: jeffreydi@gmail.com.kdsbzmpgxtnxyav.emsvr.com -->

>
> It might be helpful to set a time. I am available from 8-9AM PST and
> after 10AM PST.

>
>
> On Wed, Mar 19, 2008 at 6:23 PM, <rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> > wrote:
> > Mr. Isaacs:
> >
> > I will be back in the office tomorrow and will be happy to discuss the discovery issues with you.
> >
> > Robin Dal Soglio
> > Sent from my Verizon Wireless BlackBerry
> >
> >
> >
> > -----Original Message-----
>
> > From: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu <mailto:jeffrey.isaacs.wg03@wharton.upenn.edu> >
> >
> > Date: Wed, 19 Mar 2008 17:48:49

> > To:rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink" <robinmfink@hotmail.com
<mailto:robinmfink@hotmail.com> >
> > Subject: Rule 37 Conference

> >
> >

> > on-behalf-of jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> ; Wed Mar 19 21:48:52 2008 Received: from wf-
out-1314.google.com (wf-out-1314.google.com [209.85.200.171]) by mx (8.13.8/8.13.8/CWT/DCE) with ESMTP id
m2JLmpdN023564 for ; Wed, 19 Mar 2008 21:48:52 GMT Received: by wf-out-1314.google.com with SMTP id
28so658700wfc.14 for ; Wed, 19 Mar 2008 14:48:49 -0700 (PDT) DKIM-Signature: v=1; a=rsa-sha256;
c=relaxed/relaxed; d=gmail.com; s=beta; h=domainkey-signature:received:received:message-id:
date:from:sender:to:subject:mime-version:content-type:content-transfer-encoding:content-disposition:x-google-sender-
auth; bh=EM/O/9KdCprqVEvwByIaxfjZYjfOGdvVh/xtNFUrZRY=; b=cj4aHYoYLCE7wtgSZDVkL+
J4YzNRd7SyBfTzs7Q3Vh3AQ9gLvrWepskGkGNOKS2sEzyZYanzYwpMo1h4Zm
YHpyeX83ERDxJbuuBeqoiQwmOFmJtSz3FUHzrkcyTfTf9DMJM/0P74W1Sse9C20PN4+
BDMEdz5F1JEk08dnxUlhuA= Received: by 10.143.6.1 with SMTP id j1mr684218wfi.45.1205963329256; Wed, 19
Mar 2008 14:48:49 -0700 (PDT) Received: by 10.142.216.7 with HTTP; Wed, 19 Mar 2008 14:48:49 -0700 (PDT)
Message-ID: Date: Wed, 19 Mar 2008 17:48:49 -0400 From: JDI Sender: jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com>  To: rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com> , "Robin Fink"
Subject: Rule 37 Conference X-Google-Sender-Auth: 9e40791bcd1b825a Reply-To: JDI MIME-Version: 1.0 Content -
Type: text/html; charset="ISO-8859-1" Content-Transfer-Encoding: 7bit Disposition-Notification-To: "them" X-Confirm-
Reading-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoh.emsvr.com>  Return-Receipt-To: jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com
<mailto:jeffreydi@gmail.com.bolvombnqzxmuoh.emsvr.com>  Notice-Requested-Upon-Delivery-To:
jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com>
Errors-To: jeffreydi@gmail.com.bolvombnqzxmuoi.emsvr.com <mailto:jeffreydi@gmail.com.
bolvombnqzxmuoi.emsvr.com>  -->
> >
> > Ms Dal Soglio:
>
> > I attempted to telephone your office today but received voicemail for

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 28

> > both you and your paralegal. Three weeks ago you informed me that your
> > paralegal would discuss my discovery issues. Last week I was informed
> > that your firm believes that it has no more discovery to produce. Will
> > you teleconference on this issue, or am I to file a motion to compel
> > without your joint stipulation? It seems you have been aware of my
> > concerns for weeks - if not months - and once again, these delays are
> > rather concerning.
> >
> > Please note that all outstanding settlement offers are canceled, as
> > per the emails last week; Nonetheless I remain willing to discuss them
> > if you have made any progress with your client.
> >
> > Regards
> > Jeffrey Isaacs
> >
> > ReadNotify.com E-mail Posting-Time Digital Certificate. On Wed, 19 Mar 2008 21:48:54 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&amp;when=Wed, <http://www.ReadNotify.com/timezone.asp?
zone=&when=Wed,>  19 Mar 2008 21:48:54 GMT> the above e-mail arrived from jeffreydi@gmail.com
<mailto:jeffreydi@gmail.com>  <mailto:jeffreydi@gmail.com <mailto:jeffreydi@gmail.com> > for rdalsoglio@dm-
lawfirm.com <mailto:rdalsoglio@dm-lawfirm.com>  <mailto:rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-
lawfirm.com> > , was assigned sequence number #8399695 <http://www.readnotify/readnotify/showsig.asp/
8399695.htm#8399695 <http://www.readnotify.com/readnotify/showsig.asp/8399695.htm#8399695> > and ReadNotify
reference 49acad30c8e6081f4309e929f8c1bb41, digitally signed, and immediately dispatched. NB: This certificate
irrevocably links the body and headers of this email to the date and time they were dispatched. The following
signature is now published online; to view it, verify it, or for more information, please visit  www.ReadNotify.com
<http://www.ReadNotify.com>  <http://www.readnotify/readnotify/postcert.asp/8399695.htm#8399695
<http://www.readnotify.com/readnotify/postcert.asp/8399695.htm#8399695> > . -----BEGIN PGP SIGNATURE-----
Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate #8399695, created Wed, 19
Mar 2008 21:48:54 GMT iQBvAwUBR+GKRjanThAdit3tAQEw6gLQkbYswgljjREHGt8/d78KaSinYG4lO28v
lFGt9sWbHLIKcYxYzDuP6KKwKDbfKlwsczC4ucpLsd5cLTTB7/Z8egmR4PememQ4 3LSvPGO/YtuxFywZpD3zrZV6
=Le/U -----END PGP SIGNATURE-----
>
> >
> > <>
> >
> > Rule 37 Conference Rule 37 Conference
>
>
>
> ReadNotify.com E-mail Posting-Time Digital Certificate.   On Thu, 20 Mar 2008 02:54:58 GMT
<http://www.ReadNotify.com/timezone.asp?zone=&when=Thu, 20 Mar 2008 02:54:58 GMT>  the above e-mail arrived
from jeffreydi@gmail.com <mailto:jeffreydi@gmail.com>  for rdalsoglio@dm-lawfirm.com <mailto:rdalsoglio@dm-
lawfirm.com> , was assigned sequence number #8401223 <http://www.readnotify.com/readnotify/showsig.asp/
8401223.htm#8401223> and ReadNotify reference 7242c15d06dfd77f8d82a78a4adc85af, digitally signed, and
immediately dispatched. NB: This certificate irrevocably links the body and headers of this email to the date and time
they were dispatched. The following signature is now published online; to view it, verify it, or for more information,
please visit  www.ReadNotify.com <http://www.readnotify/readnotify/postcert.asp/8401223.htm#8401223> . -----
BEGIN PGP SIGNATURE----- Version: GnuPG v1.0.6 (ReadNotify.com TimeStamp Server v2.2) Comment: Certificate
#8401223, created Thu, 20 Mar 2008 02:54:58 GMT iQBvAwUBR+HSAzanThAdit3tAQET7ALPVyz1yVs9
wgQPkzH1xrOqn9TvDt6RUNr7 TXnXHaKXAgKfMq1J3/CjGov1eeYXjJBspneD/
MseTQWwspxBWdzQ1aCl6WgnGEXN FRmxumOfgsvfBCRQpV+m+w3+ =5A6y -----END PGP SIGNATURE-----
>
> >  <>
>

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 29

 **Gmail**

Jeffrey D I <jeffreydi@gmail.com>

## Follow up to Rule 37 Conference

1 message

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                                    Thu, Mar 20, 2008 at 5:32 PM
To: "Robin D. Dal Soglio" <rdalsoglio@dm-lawfirm.com>

Ms Dal Soglio:

I understand you will be providing written responses to me on Monday -
I assume these will be electronic so that the March 31st filing
deadline can be met.

It remains my position that USC views this matter in an
over-simplified way, consisting of several procedural rubber stamps
that absolutely failed to investigate the substance of the
cross-allegations.

As discussed, I am attaching some excerpts from interrogatories I
answered for Mr Payne, as well as an affidavit I prepared. As always,
if your client is interested in actually mediating on such issues, I
am available by phone and /or videoconference.

Regards
Jeffrey Isaacs

"Upon leaving the SPC meeting, Fred Kuyt telephoned me, he was very
upset.  He said that he was beyond his ability to help, that this case
had somehow enough become me versus the something much larger.  He
told [in his exact words] me to "sue the fuck" out of USC, that they
had "screwed" me, that it was entirely wrong what had happened. These
were his exact words; he recommended that I sue USC. He said he had
absolutely no respect for Katsufrakis, rather, disdain. He further
commented that Henderson, in his opinion, wasn't "impressive,"
neither as an Oncologist nor a Dean.
…
I felt that this whole ordeal gave Katsufrakis some form of perverse
pleasure. He seemed to take an interest in me that went above and
beyond that of Deans I have previously interacted with at other
schools. In our meeting, Katsufrakis would frequently look strangely
at my clothes, my shoes, etc and treat me in an odd manner. He
commented on my clothes and "sophisticated" style of dress, and made
comments that could be construed as improper advances. There were
always double-entendres; he asked me how I felt being "caught with my
pants down" in reference to the behavior I attribute as a reaction to
harassment from others, and my disability. I believe his handling of
the entire manner had ill intentions. To make matters worse, he knew
that I was afraid of the NIH involvement and played on my fears. He
took advantage of this fact.
…
I had an anxiety disorder (PTSD) and was taking the wrong medication
at the time all this unraveled. To the extent that any of emails

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 30

indeed showed anxiety that was not abnormal , there can be little
doubt that such anxious behavior immediately ceased upon correction –
i.e. cessation - of the incorrect medication. To me, the disability
claim in my case is supported by the fact that USC still refuses to
acknowledge the role of my disability – and improper medication – on
this situation.  I never would have done anything illegal at USC, and
their defense that they were looking out for student safety represents
an  unfortunate stigma, and nothing more.
…
I am happy that Keck has found a new Dean who seems passionate about
an environment that fosters academic enrichment and quest for medical
knowledge. As I mentioned in an earlier settlement paper, I also
strongly feel USC is better off without Katsufrakis. I believe a good
Dean , with  good motives, could have easily averted this whole
situation.

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 31

 **Gmail**

<span style="color:gray">Jeffrey D I &lt;jeffreydi@gmail.com&gt;</span>

---

## RE: Receipt of Documents; Motion/Appeal status
1 message

---

**Robin Dal Soglio** &lt;rdalsoglio@dm-lawfirm.com&gt;                    Wed, Mar 26, 2008 at 3:37 PM
To: JDI &lt;jeffrey.isaacs.wg03@wharton.upenn.edu&gt;

Mr. Isaacs:

I believe that the documents produced cover more than one request. I will
be sending you my portion of the Joint Stipulation later today and it should
clarify that there are very few disputes remaining.

I also have a few additional documents which I plan on producing to you
today. Would you like me to have the scanned and emailed to you, as I did
yesterday. If so, I can simply add it to the cost of yesterday's production
to be deducted from your deposit. Otherwise, I will mail them to your
address of record.

I do not believe that the judge will give me a continuance for my SJ filing
deadline, even upon stipulation of the parties. What I suggest is that I
proceed with filing my SJ motion, but then we can submit a stipulation to
continue the hearing date (and the filing deadlines for your opposition and
my reply), until after resolution of the motion to compel. That way, we can
assure that you have all documents, if any, to which the judge determines
you are entitled prior to having to oppose the motion for SJ.

With respect to your settlement offer, USC rejects your offer to the extent
that it purports to characterize the settlement as a "tuition
reimbursement." USC's offer to settle this matter for $10,000 total will
remain open until 5:00 p.m. on April 7, 2008.

Sincerely,
Robin Dal Soglio


Robin D. Dal Soglio
DAL SOGLIO & MARTENS LLP
27240 Turnberry Lane, Suite 200
Valencia, California  91355
Phone (661) 362-0736
Fax (661) 244-4942


-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Wednesday, March 26, 2008 10:26 AM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com; Robin Dal Soglio
Subject: Receipt of Documents; Motion/Appeal status

Ms Dal Soglio:

**19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 32**

 **Gmail**                                                                                            Jeffrey D I <jeffreydi@gmail.com>

## USC Settlement Acceptance Terms

1 message

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                                          Wed, Mar 26, 2008 at 5:47 PM
To: rdalsoglio@dm-lawfirm.com.certified.readnotify.com, Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>

Dear Ms Dal Soglio:

I wish to make an in - principal terms agreement which hereby accepts
the $10,000 settlement offer your client made today. The following
terms are drafted as per our conversation this afternoon.

1) USC issues immediate compensation of $7,250 to me in exchange for
an immediate bilateral general release and dismissal of CV-06-3338.
Specifically, from this point forward, no appeals will be filed now
will any additional motions be filed.

2) In approximately six months, USC agrees to re-hear, confidentially
and in good faith, my appeal of student status among a group of five
to twenty Keck faculty members. I hereby represent that this appeal
would present substantial new information. I submit that this
significant new information would outweigh evidence presented two
years ago regarding my ability to conform to the Keck School of
Medicine essential characteristics. .

3) In the event Isaacs and the appeal committee are unable to reach a
mutually agreed upon appeal outcome, USC will issue the remaining
compensation of $2,500 under the settlement terms offered.

I would appreciate a response on this as soon as possible, given the
time constraints you recognized.

Regards,
Jeffrey Isaacs

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 33

 Gmail

## Re: Isaacs v. USC Settlement Agreement

1 message

**JDI** <jeffrey.isaacs.wg03@wharton.upenn.edu>                                    Mon, Mar 31, 2008 at 5:21 PM
To: Robin Dal Soglio <rdalsoglio@dm-lawfirm.com>, rdalsoglio@dm-lawfirm.com.certified.readnotify.com

Hopefully, in response to this email, you can send me a FINAL PDF copy
that I will SIGN AND RETURN.

On Mon, Mar 31, 2008 at 5:20 PM, JDI
<jeffrey.isaacs.wg03@wharton.upenn.edu> wrote:
> I just received this email. Unfortunately I thought that USC was at
> least acknowledging that there is a factual dispute -- not denying
> right or wrong -- and agreeing that I don't need to disclose anything
> because it is disputed and was never determined as right or wrong in a
> Court of law. I don't see how this creates any problem for them - it
> is simply saying the case settled for $10000 before it was tried on
> its merits, and as such, that I don't need to disclose anything about
> any related history.
>
>
> On Mon, Mar 31, 2008 at 3:44 PM, Robin Dal Soglio
>
>
> <rdalsoglio@dm-lawfirm.com> wrote:
> > Mr. Isaacs:
> >
> > I have forwarded your inquiry to my client, as it again re-opens the issue
> > of your desire to have USC advise you on what you do or do not have to
> > disclose to 3rd parties about your academic and disciplinary history at USC.
> > As you know, I have repeatedly made clear that USC cannot advise you or
> > provide you any assurances concerning your obligations in that regard.
> > Contrary to your assertion, this was not limited to their reluctance to
> > alter records.  I also previously rejected your request to characterize the
> > settlement payment as a "tuition reimbursement" on the same grounds. What
> > you choose to disclose to 3rd parties about your educational/disciplinary
> > history at USC is a private matter between you and any 3rd parties you deal
> > with.  Nevertheless, I have forwarded your request to expand the language to
> > include "this matter and related history."
> >
> > I will respond as soon as I hear back from USC.
> >
> > Robin Dal Soglio
> >
> >
> > -----Original Message-----
> > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> >
> >
> > Sent: Monday, March 31, 2008 12:02 PM

> > To: Robin Dal Soglio
> > Subject: Re: Isaacs v. USC Settlement Agreement
> >
> > I agree with your comments about MSJ.
> >
> > My query on "this matter" was on the revised settlement agreement.
> > Does this refer only to the lawsuit or the entire academic history. If
> > USC can agree that I don't need to disclose any of this matter -- ie
> > anything in 2005-2006 at USC< then i will accept your proposed revised
> > agreement. please advise ASAP.
> >
> > As far as the MSJ, no surprises there.
> >
> > On Mon, Mar 31, 2008 at 2:51 PM, Robin Dal Soglio
> > <rdalsoglio@dm-lawfirm.com> wrote:
> > > Mr. Isaacs:
> > >
> > > We can include a sentence at the end of Paragraph 14.c. (erroneously
> > labeled
> > > as d. in the prior draft) that states "However, the parties further agree
> > > that Isaacs is not required to disclose this matter to anyone." Keep in
> > > mind, the court does not approve the settlement terms themselves, just
> > the
> > > dismissal. I have attached the revised Agreement to include this term.
> > I
> > > am also attaching the Stipulation of Dismissal for your review.
> > >
> > > Do you have other comments to the Settlement Agreement?
> > >
> > > Attached is a copy of the MSJ. I understand that you will disagree with
> > > much that is stated in here. However, Mr. Isaacs, I strongly encourage
> > you
> > > to not become distracted on the MSJ. Let's focus on settling this matter
> > > and putting it behind us. I believe it would be a waste of time to start
> > > going back and forth about the contents of the MSJ, and I am not going to
> > > spend any of my time doing so.
> > >
> > > Please let me know if you have additional comments to the Settlement
> > > Agreement. Otherwise, please pdf the executed Settlement Agreement to me
> > as
> > > soon as possible.
> > >
> > > Sincerely,
> > >
> > > Robin D. Dal Soglio
> > >
> > > -----Original Message-----
> > > From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
> > > Sent: Monday, March 31, 2008 10:16 AM
> > > To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
> > > Subject: Re: Isaacs v. USC Settlement Agreement
> > >
> > >
> > > Dear Ms Dal Soglio:
> > >
> > > I have read the proposed settlement agreement. With respect to

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 35

> > > paragraph 14, as you know I have no desire to disclose this matter to
> > > anyone. However, by signing off that the matter has been resolved, I
> > > would have difficulty answering future applications. Do you think
> > > there is  a way to do this where the Court approves a settlement that I
> > > have no requirement to disclose this matter to anybody?
> > >
> > > Also, will you be sending me the SJ motion in PDF now so I can review
> > > your clients view of events?
> > >
> > > Jeffrey Isaacs
> > >
> > > On Mon, Mar 31, 2008 at 1:03 PM, Robin Dal Soglio
> > > <rdalsoglio@dm-lawfirm.com> wrote:
> > > >
> > > >
> > > >
> > > >
> > > > Mr. Isaacs:
> > > >
> > > >
> > > > Attached please find the draft settlement agreement.  Please
> > sign/initial
> > > > where indicated and return the Agreement to me via pdf.
> > > >
> > > >
> > > > Thank you,
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > >
> > > >
> > > >
> > > > Robin D. Dal Soglio
> > > >
> > > > DAL SOGLIO & MARTENS LLP
> > > >
> > > > 27240 Turnberry Lane, Suite 200
> > > >
> > > > Valencia, California  91355
> > > >
> > > > Phone (661) 362-0736
> > > >
> > > > Fax (661) 244-4942
> > > >
> > > >
> > > >
> > > >
> > > >
> > >
> >
> >
> >

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 36

# M Gmail

Jeffrey D I <jeffreydi@gmail.com>

## RE: Isaacs v. USC Settlement Agreement
1 message

**Robin Dal Soglio** <rdalsoglio@dm-lawfirm.com>                    Mon, Mar 31, 2008 at 7:05 PM
To: JDI <jeffrey.isaacs.wg03@wharton.upenn.edu>

That language is acceptable.  The pdf is attached.

-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of JDI
Sent: Monday, March 31, 2008 3:03 PM
To: Robin Dal Soglio; rdalsoglio@dm-lawfirm.com.certified.readnotify.com
Subject: Re: Isaacs v. USC Settlement Agreement

Ms Dal Soglio:

I hope you can appreciate that the wording here is quite important to
me. I am not trying to drag this on. With the wording you propose, I
just want to make the paragraph a bit more specific. Let me know if
tis is ok for 14c. If so forward me the final version and i will
review it with my attorney for signing.

c) If Isaacs is asked about his claims against USC, including breach
of enrollment contract and wrongful dismissal, and only if asked, he
may state only that "the matter has been resolved."  However, the
parties further agree that Isaacs is not required to disclose this
matter to anyone.

On Mon, Mar 31, 2008 at 5:53 PM, Robin Dal Soglio
<rdalsoglio@dm-lawfirm.com> wrote:
> Mr. Isaacs:
>
>  USC will agree to either of the following --
>
>
>  "However, the parties further agree that Isaacs is not required to
disclose
>  this matter to anyone."
>
>  OR
>
>
>  "The parties further agree that nothing in this Agreement requires Isaacs
to
>  disclose this matter or any related history to anyone."
>
>  Please advise whether either of these is acceptable.
>
>
>  Robin D. Dal Soglio
>

# ASSOCIATED ATTORNEYS
## OF NEW ENGLAND

USC OFFICE OF GENERAL COUNSEL
Via Email:

RE: Jeffrey Isaacs v. USC

To Whom It May Concern,

I represent Dr. Jeffrey Isaacs and am authorized to send you this brief outline of my client's position with the intention of scheduling a meeting to discuss possible resolution short of litigation. You will find the complaint filed against you by my client attached. This matter originates with Dr. Isaacs time as a Keck medical student. He was dismissed from the program while undergoing treatment for a head injury. He signed two settlement agreements with Keck to allow him a chance to start again in his pursuit a career in medicine. Despite the sealed nature of these records they were disclosed to Dartmouth, via the actions of John Doe, and needlessly ended the career of a talented physician. The unacceptable result is that Dr. Isaacs currently faces lifelong career and reputational assassination.

I anticipate discovery will show that the Keck SPC individual faculty members never would have imagined their actions would effectively punish Dr Isaacs for ultimately excelling in medical school, which is what has happened.Though they were acting as agents of the college at the time it is expected that Ball and Henderson's retaliation and the intended effects of the same were hidden from USC and other institutions. Given the behavior of Ball and Henderson and the eventual release of Dr. Isaacs' records by USC Keck is liable for the horrific events that Dr. Isaacs has suffered for the last ten years.

The New Hampshire Board, a competent authority, found that USC breached their

Associated Attorneys of New England
August 3, 2018
Page 2 of 3

settlement promises to Dr Isaacs by failing to discharge his negative administrative record. The NH Board order has withstood review at both the New Hampshire Supreme Court and the United States Supreme Court. In view of the breached contract and your apparent liability for John Doe's disclosure of sealed academic records, we submit that this matter is very much ongoing and unsettled. Keck has an opportunity to correct damages inflicted from their past mistake of favoring a student who had, in her own words, been admitted only through her NIH connections and contributions to the Dean. Dr. Isaacs was undergoing treatment for a concussion at the time of the SPC dismissal; any jury will find it unconscionable if Keck continues to assert that Dr. Isaacs, who later excelled in medical school, deserves lifelong punishment because of a student whose place in medical school was obtained through *quid pro quo*. It is also expected that discovery will show what Dr. Isaacs always claimed, that the discipline Dr. Isaacs suffered was particularly harsh because that student's father oversaw government funding to the institution.

Admittedly, Keck USC is in an interesting position with regards to this case. On the one hand, the actions of Attorney Ball and others mentioned are retaliation in violation of RICO, but on the other, it does not appear that it was ever USC faculty's intention to bar Dr. Isaacs from rehabilitating and practicing medicine. This point, before service of the complaint offers us a short lived opportunity to resolve these issues.

Local Rule 16-15 states that it is the policy of the Court to have the parties discuss settlement. I am reaching out to you with the intention of conducting in person settlement discussions via a California licensed mediator/ADR, prior to requiring your answer or response to the complaint. Dr. Isaacs is a promising physician who has been looking for an opportunity to pursue his chosen career, and he is hopeful that the school where he began that path will reverse course and aid him in fulfilling that goal. USC is in a unique position to remedy the wrongs that,

Associated Attorneys of New England
August 3, 2018
Page 3 of 3

as we can detail in the ADR, lead to a chain of misinformation and mistreatment at downstream institutions, and ultimately, White House factfinding and the World Bank President's resignation.[1]

In 2007, Dr Isaacs, *pro se*, appeared at the scheduling conference with United States District Judge Feess. He stated he wanted nothing from the lawsuit other than readmission to Keck. Feess, apparently incredulous that the matter had reached his courtroom, asked the parties to work out a settlement. Keck, apparently at the direction of Ball and Henderson, chose not to do the right thing. One can only hope, after over a decade of my client's suffering, we will not be making the same argument to United States District Judge Fischer.

In efforts to advance prompt exchange of information and reduce litigation costs, my client is willing to pay for the proposed ADR/mediation.[2] Kindly, accept or decline his offer at your earliest convenience.


Regards,



Atty. Keith A. Mathews

---

[1] USC's incoming President was also Jim Yong Kim's successor at Dartmouth, and had some duty to investigate the matter that ultimately, we believe, lead to White House questioning and said resignation. These matters will be detailed in discovery in the event Dr. Isaacs' RICO claims progress.

[2] If he would be willing/able to take the case, we propose Judge Gary A. Feess as an ADR mediator at Phillips ADR. We believe his potential; recollection of the case, at a relatively early time in the current dispute, would be beneficial to both sides. Alternatively, please provide us three other mediators to choose from.

 Gmail

# [FWD: Re: Isaacs matter]
1 message

**keith@aaone.law** <keith@aaone.law>                                      Fri, May 31, 2019 at 8:08 AM
To: Jeffrey Isaacs <jeffrey.isaacs.wg03@wharton.upenn.edu>

Not good, let me think about the best way to handle.

Keith

-------- Original Message --------
Subject: Re: Isaacs matter
From: Andreas Joerg Meyer <andreasm@usc.edu>
Date: Thu, May 30, 2019 8:15 pm
To: "Keith Mathews, Esq." <keith@aaone.law>

Mr. Mathews,
I am in receipt of your correspondence and the complaint filed by your client.

The University of Southern California (USC) unequivocally rejects your client's request to engage in
mediation. Not only does the University dispute the facts set forth in the complaint and in your letter, but we
believe the complaint to suffer from so many legal deficiencies and factual inaccuracies that it is not only
inviable but also frivolous and harassing. We demand that the complaint be dismissed in its entirety
immediately. If your client proceeds with the complaint, USC will not only mount a vigorous defense, but we
will also pursue all remedies available to the University, including sanctions under Rule 11 and a
counterclaim for liquidated damages, costs, and attorneys' fees caused by your client's breach of more than
one provision contained in the Confidential Settlement Agreement and Release he entered into with the
University in 2008.

Sincerely,

Andreas J. Meyer
University Counsel
University of Southern California
Office of the General Counsel
Tel: (213) 740-7922
Asst: Erin Snyder (erinsnyd@usc.edu)

**From:** Keith Mathews, Esq. <keith@aaone.law>
**Sent:** Friday, May 24, 2019 4:06:22 PM
**To:** Andreas Joerg Meyer
**Subject:** Isaacs matter

We had spoken a few weeks ago regarding Mr. Isaacs. I have attached a letter explaining his position as
well as the suit that has recently been filed. Please do not hesitate to contact me if additional information
would be useful to you. I look forward to speaking with you further about the case.
Regards,
Keith

19-cv-2011 Isaacs v. USC    Amended Complaint Exhibits Page 41

*Atty. Keith A. Mathews*
*Associated Attorneys of New England*
*587 Union Street*
*Manchester, NH 03104*
*****************************
*www.AAONE.law*
*Tel: (603) 622-8100*
*Fax: (888)912-1497*

CONFIDENTIALITY NOTICE:
This e-mail and any files transmitted with it are confidential, may be protected by the attorney-client privilege, and are intended for use by the addressee(s) only. If you are not the intended recipient or the person responsible for delivering e-mail for the intended recipient, be advised that any use, dissemination, forwarding, printing, or copying of this e-mail is strictly prohibited. If you believe you have received this e-mail in error, please destroy it immediately and notify me at 603-622-8100. Thank you.

 Gmail

<span style="float:right">Jeffrey D I <jeffreydi@gmail.com></span>

## Re: Keck Service of Process
1 message

**Jeffrey** <jeffreydi@gmail.com>                                    Thu, Jun 6, 2019 at 8:37 PM
To: Andreas Joerg Meyer <andreasm@usc.edu>
Cc: "Fogelman, James P. (JFogelman@gibsondunn.com)" <JFogelman@gibsondunn.com>, "Stacy R. Bratcher"
<bratcher@usc.edu>

To clarify, you decline to correct your breach or you decline ADR with Judge Feess?

On Thu, Jun 6, 2019 at 8:34 PM Andreas Joerg Meyer <andreasm@usc.edu> wrote:

Dr. Isaacs:

We decline.  Please refer all future correspondence to James Fogelman of Gibson, Dunn & Crutcher.  He
represents the University in this matter and I have copied him here.


Sincerely,


Andreas J. Meyer

University Counsel

University of Southern California

Office of the General Counsel

Tel: (213) 740-7922

Asst: Erin Snyder (erinsnyd@usc.edu)


**From:** Jeffrey <jeffreydi@gmail.com>
**Sent:** Thursday, June 6, 2019 3:42 PM
**To:** Stacy R. Bratcher <bratcher@usc.edu>; Lil Gomez Delcampo <ldelcamp@usc.edu>; Andreas Joerg Meyer
<andreasm@usc.edu>
**Subject:** Keck Service of Process


USC General Counsel:


I have received notice that you were served yesterday, despite you not responding to my inquiry re an agent to
accept service.

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 43

I remain willing to extend your answer date, by stipulation, should you decide to accept my offer to participate in ADR with Judge Feess.

I do not know if Attorney Mathews mentioned to you or not, but I am not seeking monetary compensation through ADR (although I believe a jury would award substantial damages for the decade long loss I've incurred). I am merely seeking USC make efforts 1) to comply with the original settlement by correcting appropriate records  and 2) help reinstate my GME training that was prematurely ended as a result of said breach.

Dr Jeffrey Isaacs

--
Sent from Gmail mobile

1  conduct alleged." *Holmes v. Sec. Investor Prot. Corp.*, 503 U.S. 258, 268 (1992)

2  (emphasis added).  Accordingly, "[w]hen a court evaluates a RICO claim for proximate

3  causation, the central question it must ask is whether the alleged violation led *directly* to

4  the plaintiff's injuries." *Anza v. Ideal Steel Supply Corp.*, 547 U.S. 451, 461 (2006)

5  (emphasis added).  Yet, Plaintiff fails to explain how the alleged transmission of his

6  Keck transcripts led directly to his termination from the DHMC residency program and

7  the revocation of his medical license.  It was not Keck's transmission of his transcript

8  that prompted the revocation of his license, but rather *his* failure to disclose his

9  attendance at Keck that led to his reprimand and the revocation of his license.  *In re*

10  *Jeffrey D. Isaacs M.D.*, Final Decision and Order, at 8-9.  USC did not "cause"

11  Plaintiff's intentional omissions.

## D.     Plaintiff's Claims Are Barred by Res Judicata

13          Res judicata bars Plaintiff's complaint because it arises from exactly the same

14  facts alleged in his 2012 lawsuit against the Trustees of Dartmouth College, which was

15  resolved against him.  *Isaacs v. Dartmouth-Hitchcock Med. Ctr.*, 2014 WL 1572559, at

16  *1-2.  "Res judicata, or claim preclusion, prohibits lawsuits on any claims that were

17  raised or could have been raised in a prior action." *Stewart v. U.S. Bancorp*, 297 F.3d

18  953, 956 (9th Cir. 2002) (quotation omitted).  "Res judicata applies when there is: (1) an

19  identity of claims; (2) a final judgment on the merits; and (3) identity or privity between

20  parties." *Id.*  Here, all three elements are present.

21          *First*, there is an identity of claims.  "The central criterion in determining whether

22  there is an identity of claims between the first and second adjudications is whether the

23  two suits arise out of the same transactional nucleus of facts." *Owens v. Kaiser Found.*

24  *Health Plan, Inc.*, 244 F.3d 708, 714 (9th Cir. 2001) (quotations omitted).  Whether the

25  "common nucleus criterion" is met depends on "whether [the events] are related to the

26  same set of facts and whether they could conveniently be tried together." *Stewart*, 297

27  F.3d at 987 (quotation omitted).

28

Gibson, Dunn &
Crutcher LLP

DEFENDANT USC KECK SCHOOL OF MEDICINE'S NOTICE OF MOTION AND MOTION TO DISMISS
PLAINTIFF'S COMPLAINT; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION
TO DISMISS



Jeffrey Isaacs <jeffreydi@gmail.com>

# RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

1 message

**ERASInvestigations** <erasinvestigations@aamc.org>                     Thu, May 3, 2012 at 1:00 PM
To: "Jeffrey D. Isaacs" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Thank you for your response.  Your request is reasonable, and as such, we will honor your request to keep the Keck information off of the report.  This will require that you submit a new statement that does not mention the Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.  Please note, that our director is out of the office this week, so the report may be delayed waiting on her approval.


Best Regards -




-----Original Message-----
From: jeffreydi@gmail.com [mailto:jeffreydi@gmail.com] On Behalf Of Jeffrey D. Isaacs
Sent: Wednesday, May 02, 2012 12:45 PM
To: ERASInvestigations
Subject: Re: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

Dear Rochelle,

Attached is my signed response to the ERAS investigation you notified me about on April 18, 2012. Please let me know if there is any further information that will be of use to you.

Regards,
Jeffrey Isaacs


On Wed, Apr 18, 2012 at 4:49 PM, ERASInvestigations <erasinvestigations@aamc.org> wrote:
> complete, timely and accurate information



Jeffrey Isaacs <jeffreydi@gmail.com>

# ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID 12121531

1 message

---

**ERASInvestigations** <erasinvestigations@aamc.org>                Wed, Apr 18, 2012 at 4:49 PM
To: "jeffrey.isaacs.wg03@wharton.upenn.edu" <jeffrey.isaacs.wg03@wharton.upenn.edu>

Dear Dr. Isaacs:

ERAS-the Electronic Residency Application Service (ERAS(r)) has initiated an investigation of your ERAS 2012 application. We have been informed that there is a discrepancy with your ERAS application. Specifically:

It was discovered you attended Keck School of Medicine of the University of Southern California from August 2005 through June 2006. Additionally, there is information that from July 1, 2010 through August 13, 2010 you held a position with the University of Arizona, as a Surgery Resident. In viewing your certified application dated October 13, 2011 this information was not provided.

By omitting this information, you failed to provide complete, timely and accurate information.

We request that you provide us with any information you may have about this matter in a written and signed statement within two weeks of your receipt of this letter.  Unless you specifically request otherwise, a copy of your statement will be appended to any future report issued, along with any other relevant information collected.

A copy of the allegation letter, AAMC Policies and Procedures for Investigating Reported Violations of Residency/Fellowships Application Standards' and your application is enclosed for your viewing.

Your response can be sent electronically to ERASInvestigations@aamc.org as well as hard copy to:

Association of American Medical Colleges
2450 N Street NW
Attn: B. Renee Overton, Director, ERAS
Washington, DC 20037

Best wishes,
Rochelle Campbell
ERAS Administrative Specialist
Association of American Medical Colleges
2450 N Street NW
Washington, DC 20037
202 828-0508
rcampbell@aamc.org

---

📄 **ERASInvestigationPackageElectronicVersion.pdf**
3114K



37

1    evidence.

2            MS. MOONEY:  All right.  And that will be

3    so.  Go ahead with your questions to Dr. Finn,

4    Attorney Pyles.

5      (Claim Evidence number 3 admitted into evidence.)

6            MR. PYLES:  Thank you, Chairperson.

7    BY MR. PYLES:

8       Q.   Dr. Finn, looking at page 7 of Mr. Isaacs'

9    packet, do you recognize that form?

10      A.   Yes.

11      Q.   And that's a standard form; isn't it?

12      A.   It is, to the GME office.

13      Q.   Question 3, do you see that there?

14      A.   Yeah.

15      Q.   That question asked, "Have you ever been

16   reprimanded, sanctioned, restricted or disciplined in

17   any activities involving medical education or

18   practice?"  Mr. Isaacs wrote "no."  Do you have

19   reason to believe that that statement is false?

20      A.   Yes.

21      Q.   And what do you -- why do you believe that

22   statement is false?

23      A.   I believe that both the Arizona and USC I

38

1  propose would trigger a "yes" response to that

2  question.

3      Q.   Is that a misrepresentation?

4      A.   Yes.

5      Q.   Now is this form part of the application

6  packet you rely on when taking in those 500

7  applications for seven spots?

8      A.   No.  This form is generated after applicants

9  have been accepted to the program and is part of

10 their employment and credentialing at Dartmouth

11 Hitchcock Medical Center.

12     Q.   So this wasn't something you relied on in

13 making your decision; correct?

14     A.   No.

15     Q.   But it is a form submitted to what, the

16 Board of Medicine?

17     A.   This I believe is an internal document for

18 our hospital credentials.

19     Q.   Okay.  And underneath that it's certified

20 under pains and penalties of perjury to be true and

21 accurate; correct?

22     A.   Correct.

23     Q.   And it is not true and accurate; is it?

# RE: ERAS INVESTIGATION NOTIFICATION-JEFFREY DAVID ISAACS AAMC ID

May 3

**ERASInvestigations** @ via wharton.upenn.edu

to Jeffrey

Thank you for your response. Your request is reasonable, and as such, we will honor your request to keep the Keck information off of the report. This will require that you submit a new statement that does not mention the Keck school and we will provide a new draft preliminary report that only mentions your time at Arizona.

Best Regards -

Inbox ✕    Wharton ✕

DEPOSITION EXHIBIT
PENGAD 800-631-6989





## RE: resident issue-confidential

**From:** Alan I. Green <Alan.I.Green@hitchcock.org>
**Sent time:** Tuesday, January 17, 2012 9:12 PM
**To:** Christine T. Finn <Christine.T.Finn@hitchcock.org>; William C. Torrey <William.C.Torrey@hitchcock.org>
**CC:** Alan I. Green

Thanks. Chris — please try to use my dartmouth.edu email, since I don't always get emails through hitchcock.

Thanks, A

---

**From:** Christine T. Finn
**Sent:** Tuesday, January 17, 2012 5:05 PM
**To:** Alan I. Green; William C. Torrey
**Cc:** William C. Torrey
**Subject:** resident issue-confidential

Dear Will and Alan-

As I believe you already know, we have been having some significant difficulties with one of our interns, Jeffrey Isaacs. In addition to performance issues, it has come to light that he falsified his residency application, omitting a residency program that he had started the previous year. He was placed on administrative leave on Friday morning as a result.

Today, he sent a email to Jim Kim and legal representatives at the college and DHMC with numerous allegations against us and the environment at Dartmouth, intimating his intention to seek compensation for damages. I've not seen the document, but what I heard from Art Higgins is completely ridiculous. Still, it could likely be a hassle for us. We will be represented by Ed Kaplan in this matter, and, were you to receive anything from Jeff, all contact should go through his office.

We will likely be moving to terminate for cause (for falsification of credentials) quickly, so as to not have this drag out. I will let you know when I have more information.

Chris

Christine T. Finn, MD
Director, Psychiatry Residency Training Program
Director, Crises and Consultation Service
1 Medical Center Drive
Lebanon, NH 03756
603-650-4529 (office)
603-650-9442 (fax)
603-650-5000 (pager)
christine.t.finn@hitchcock.org

Page 129

1    A.  I don't know.
2    Q.  Have you ever seen the settlement
3  agreement?
4    A.  No.
5    Q.  Can you read what paragraph two says?
6    A.  "Sealing of Disciplinary Records.  In
7  exchange for the dismissal with prejudice of
8  the individual Defendants referenced above,
9  Defendant, USC, agrees that commencing
10  immediately upon the execution of the
11  settlement agreement and receipt of the signed
12  dismissal with prejudice, USC will not release
13  or disclose Isaac's disciplinary records to any
14  third party, including but not limited to other
15  educational institutions and/or potential
16  employers unless it receives written consent
17  from Isaacs or a subpoena or court order."
18    Q.  Okay.  Do you know what that means
19  legally?  Are you comfortable with the full
20  meaning of that?
21    MR. CHABOT: I'm going to object to
22  the question.  I mean, Dr. Isaacs, she can't
23  give you a legal opinion.

Page 130

1    DR. ISAACS: I'm just asking if she
2  can give me a legal opinion.
3    MR. CHABOT: I'm telling you she
4  can't.
5    A.  I would say I cannot give a legal
6  opinion on this matter.
7    Q.  Did Attorney Kaplan give you an
8  opinion on that at the point he told you I
9  should be terminated for USC?
10    MR. CHABOT: If he did I'm going to
11  instruct you not to inform Dr. Isaacs.
12    MR. KAPLAN: I'm going to actually,
13  for the purposes of the record, I don't mind if
14  she answers if I gave an opinion, I am only
15  concerned about breaching confidence to provide
16  the opinion.  So if it's okay with you.
17    MR. CHABOT: That's fine.
18    MR. KAPLAN: You need to answer from
19  your own memory whether or not I gave you an
20  opinion, but then, I would, if I did, and
21  that's up to you to say, that opinion would be
22  privileged.
23    A.  Right.

Page 131

1    MR. KAPLAN: So why don't you repeat
2  your question, Dr. Isaacs, given those
3  instructions to the witness and perhaps we can
4  get through this.
5    Q.  Did Attorney Kaplan explain to you or
6  give you a legal opinion on the sealing of the
7  records at the point you were deciding whether
8  or not to include USC on the termination
9  letter?
10    A.  No.
11    Q.  Okay.  Turn on to the next one.  Do
12  you think it's typical for a university to seal
13  disciplinary records?
14    MR. CHABOT: Objection, foundation.
15    A.  No.
16    Q.  Do you have any general knowledge, not
17  a binding legal opinion, what it means to seal
18  something?
19    A.  I mean, I would say that in general
20  parlance it would refer to keeping something
21  private.
22    Q.  Might it mean that you don't have to
23  disclose it in certain situations?

Page 132

1    MR. CHABOT: I'm just going to object
2  to the relevance and to the foundation. You can
3  answer if you have an answer.
4    A.  I guess what I understood the last
5  document I just read was that USC would not be
6  revealing information, but we had not asked of
7  any institution for specific information.
8    Q.  But actually you testified you were
9  not comfortable legally, you're making a legal
10  decision from that which you actually said you
11  didn't want to make.  So I'd actually just like
12  answer to this question.  Do you think that
13  in some circumstances sealed records need not
14  be disclosed?
15    A.  By the institution?
16    Q.  By an individual, by anyone subject to
17  a sealed record.
18    A.  I don't know the specifics of the law
19  that governs that.
20    Q.  There might not be one.  Okay.  Keep
21  going.  So do you know what FERPA is?  Family
22  Educational Right to Privacy Act?
23    A.  No.

Page 133

1  Q. Record privacy act.
2     MR. KAPLAN: Are you looking at a tab
3  now?
4  Q. We are going page by page, this is F.
5     MR. KAPLAN: Oh, you're up to F now.
6  Q. Can you just read the title in bold
7  and the first sentence under it?
8     MR. CHABOT: I'm just going to note
9  that for the record we would object to the
10  introduction of any statute or any other
11  legislative material through this witness at
12  least.
13  A. So the title reads, "Disciplinary
14  records disclosure. Nothing in this section
15  shall prohibit an educational agency or
16  institution from," want me to keep reading?
17  Q. Yes.
18  A. "Including appropriate information in
19  the education record of any student concerning
20  disciplinary action taken against such student
21  for conduct that posed a significant risk,
22  safety or well-being of that student, other
23  students or other members of the school

Page 134

1  community."
2  Q. Or.
3  A. "Or disclosing such information to
4  teachers and school officials including
5  teachers and school officials in other schools
6  who have legitimate educational interests in
7  the behavior of the student."
8  Q. So you had just testified you don't
9  know any rules about sealing the records
10  specifically, correct?
11  A. Yes.
12  Q. Would you agree that is a federal
13  statute saying a school has an absolute right
14  to disclose disciplinary records?
15     MR. CHABOT: Objection, foundation.
16  Q. Based on reading it, does it appear
17  to be a federal statute that the school has an
18  absolute right to disclose disciplinary
19  records?
20     MR. CHABOT: Same objection.
21  A. I don't know. I guess I would
22  question whether having a right is the same
23  thing as nothing shall prohibit.

Page 135

1  Q. And I'm not going to be asking about
2  legal interpretations, but does it seem like
3  USC sealing a record violates the FERPA right,
4  the FERPA rule?
5     MR. CHABOT: Objection. Foundation.
6  A. I can't really say.
7  Q. Do you think the Plaintiff knew any
8  better when he was applying to your program?
9     MR. KAPLAN: Objection.
10  A. I also don't know.
11  Q. Okay. All right. That's the end of
12  that legal subject. We will leave it for the
13  judges to determine. You can skip that, keep
14  going. I think we are almost finished with
15  that packet.
16  A. This one, actually.
17  Q. O.
18     MR. CHABOT: Tab O Of Exhibit A.
19  Q. Can you read the name, this is proof
20  of service, the name of who was served here?
21  A. Jim Yong Kim.
22     MR. CHABOT: I am going to object just
23  to your statement about what the document

Page 136

1  means. She can certainly read the name from
2  the document.
3  Q. Is there a name of who actually
4  received a the summons?
5  A. Yes.
6  Q. And what is that name?
7  A. Vivian Barbadoro.
8  Q. Do you know who Vivian Barbadoro is?
9  A. No.
10  Q. Okay. All right. You can keep paging
11  through I think. This is P, it's P, but you
12  can go forward. This is a letter, actually the
13  last paragraph on the next page. Can you read
14  this paragraph I'm pointing to?
15  A. "In order to mitigate damages, I shall
16  be requesting expedited discovery. Pursuant to
17  Rule 34 of the Federal Rules of Civil
18  Procedure, I hereby request that all electronic
19  records relevant to my employment including
20  GIM/site, program director e-mail, phone logs,
21  department of psychiatry internal
22  communications be immediately audited and
23  preserved."

Page 297

1    the question.
2      Q.  Well, I'm trying to clarify.
3      A.  Again, I can't really say to the
4    investigative quality of it.  If ERAS has
5    determined that it did not need to be listed
6    under your educational experience, I would
7    accept ERAS's qualification.
8      Q.  Okay.  And same goes if a federal
9    judge ruled on these two settlements if they
10   agreed with ERAS or if they agreed with me,
11   would you accept their ruling or would you
12   think that Attorney Kaplan's information given
13   to you was correct?
14        MR. CHABOT: Same objection.
15     A.  I mean, again, depending on what
16   criteria are being applied, I would agree with
17   the federal court ruling.
18     Q.  If you had your choice, you
19   acknowledged earlier that these settlement
20   agreements were a little confusing to you,
21   right?  Didn't you say you didn't have the full
22   legal knowledge to interpret them?
23     A.  Yes.

Page 298

1      Q.  If you had your choice now separate
2    from your own attorneys, who would you believe
3    could authoritatively interpret them in an
4    unbiased way other than myself or your own
5    attorney?
6        MR. CHABOT: Objection, relevance.
7      A.  I can't really say who would be
8    qualified to do that.
9      Q.  Do you think that would be important
10   for the letter at this point to get an unbiased
11   opinion on whether or not ERAS, the Plaintiff
12   or Attorney Kaplan were correct?
13        MR. CHABOT: Same objection.
14     A.  No.
15     Q.  You don't think that would be
16   appropriate?
17     A.  No.
18     Q.  Why not?
19     A.  Because the USC decision, the USC
20   knowledge came significantly after the decision
21   to terminate you.
22     Q.  Okay.  Might that still have been
23   traumatic to the Plaintiff separate from the

Page 299

1    termination to have had something that landed
2    him in a psychiatric hospital used against him
3    as an evidence of fraud?
4        MR. CHABOT: Foundation.
5      A.  I can't really say.
6      Q.  Do you think it might be traumatic to
7    make an accusation that's wrong to someone?
8        MR. CHABOT: Foundation and misstates
9    prior testimony.
10     Q.  Might a wrong allegation be traumatic
11   to somebody?
12        MR. CHABOT: Same objection.
13     A.  It could be, depending on the context.
14     Q.  So then do you still believe it's not
15   important to have authoritative unbiased
16   decision on that allegation?
17        MR. CHABOT: Same objection.
18     A.  I think I said it was not important to
19   the decision to terminate you.
20     Q.  Right.  But in terms of the overall
21   damages to the Plaintiff, do you think it's
22   important to know whether or not you were right
23   or wrong on that statement?

Page 300

1        MR. CHABOT: Foundation.
2      A.  I don't know.
3      Q.  You don't know?  Do you think it would
4    be unreasonable for a federal court to find out
5    if you were right or wrong on the statement on
6    the termination letter?
7        MR. CHABOT: Objection, relevance.
8      A.  I'm not sure of the court's interest
9    in the matter.
10     Q.  What do you think of the legal system
11   in general and due process?
12        MR. CHABOT: Objection, relevance.
13     A.  I have a generally favorable view of
14   it.
15     Q.  Did you ever think about going to law
16   school?
17        MR. CHABOT: Same objection.
18     A.  No.
19     Q.  Do you have parents or direct siblings
20   that are lawyers?
21     A.  No.
22     Q.  Are they doctors?
23     A.  No.

Before the
**New Hampshire Board of Medicine**
Concord, New Hampshire

In the Matter of:                                          Docket #:  13-07
    Jeffrey D. Isaacs, M.D.
    License No.:  RT-2198
    (Adjudicatory/Disciplinary Proceeding)

## FINAL DECISION AND ORDER

Before the New Hampshire Board of Medicine ("Board") is an adjudicatory/disciplinary proceeding in the matter of Jeffrey D. Isaacs, M.D. ("Respondent" or "Dr. Isaacs").

### Background Information
### (Procedural History and Motions)

The Board of Medicine ("Board") granted Dr. Isaacs a Resident Training license pursuant to N.H. Admin. Rules Med 305.04, in May 2011.  The license was granted where the application revealed Dr. Isaacs was pursuing post graduate training at the Dartmouth Hitchcock Medical Center ("DHMC") in the psychiatry residency program ("Program").

In March 2012 the Board received information from DHMC indicating that Dr. Isaacs had been terminated from the Program where Respondent had allegedly omitted material facts from his Application for Training License for Residents and Graduate Fellows and the supplement filed along with the application.  As a result of this information, the Board commenced an investigation to determine whether Respondent committed professional misconduct pursuant to RSA 329:17, VI and RSA 329:18.

The investigation revealed the following:

Between August 2005 and June 2006 Respondent attended the Keck School of Medicine, a medical education institution, at the University of Southern California ("USC").  In February

Exhibit 2
Page 24

2006 the Keck School suspended Respondent due to behavior-related issues, and ultimately the School expelled him.  In June 2010 Respondent received a medical degree from the American University of the Caribbean.  On May 18, 2011, Respondent filed his application for training license with the Board having been enrolled in the Program at DHMC.

The application required Respondent to disclose medical schools attended.  Respondent listed the American University of the Caribbean but failed to disclose attendance at the Keck School.  Additionally, Respondent answered "No" to a question on the supplement to the application which asked whether he had "ever been reprimanded, sanctioned, restricted or disciplined in any activities involving medical education or practice."

Given the investigatory revelations the Board found reasonable basis for commencing an adjudicatory/disciplinary proceeding against Respondent.  On October 7, 2013 the Board issued a Notice of Hearing ("Notice") commencing a proceeding pursuant to RSA 329:18-a and N.H. Admin. R. Med 206 for February 5, 2014 at 1:00 p.m.  The purpose of the hearing was to determine whether in May 2011 Respondent engaged in professional misconduct by submitting false information to the Board and for failing to fully disclose all previous medical schools attended.  The Notice further indicated that Respondent could be subjected to disciplinary sanctions pursuant to RSA 329:17, VII.  The Notice also informed Respondent that he may be represented by counsel at the hearing, at his own expense; and that failure to appear may result in the hearing being held *in absentia* with disciplinary sanctions imposed without further notice or opportunity to be heard.

On January 29, 2014, at 3:14 p.m., Respondent sent the Board via e-mail, a so-called "Motion to Stay Hearing or Appear by Teleconference."  The e-mail indicated Respondent was moving to stay the proceeding because he had pending "federal litigation in the Pennsylvania

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 56

Exhibit 2
Page 25

District Court."  The e-mail further indicated that Respondent entered into a settlement agreement with USC which he alleges sealed his disciplinary records.  He further claimed that "the AAMC and NHES …both investigated this issue already and agreed with [him]."  He additionally alleged that the Board failed to investigate his allegations against DHMC, including that he was "defrauded, instructed to perform unnecessary [medical] exams and abandoned as a patient."

Respondent's January 29, 2014 e-mail also noted that he was "taking action against the Board for what appears to be punitive actions against [him]" and he requested that the Board defer "to the legal authority of the federal judiciary system and postpone [the] hearing." Respondent also wrote that he was not able to drive to New Hampshire for medical reasons, that he conducted three depositions via Skype and that if the stay was denied he requested to appear by telephone or video conference.

On February 3, 2014 hearing counsel objected to the request.  The objection indicated that Respondent failed to comply with Board rules, in that any requests to continue or postpone are required to be filed at least ten days prior to the scheduled hearing.  Additionally, hearing counsel noted further procedural issues with the request; specifically that it did not comply with the provisions of N.H. Admin. R. Med 204, et. seq.

The presiding officer denied the request to Stay the proceeding, finding first that Respondent failed to follow Board procedural regulation and for the reasons articulated in hearing counsel's objection, the so-called "motion" should be denied.  The Board found unpersuasive the notion that the case should be stayed because of a pending federal lawsuit in Pennsylvania.  Moreover, Respondent provided no information relative to his "illness." Respondent was informed of the denial on February 3, 2014 at approximately 4:30 p.m.  He

3

subsequently forwarded another e-mail on February 5, 2014, at approximately 6:00 a.m. indicating that a winter storm and his current automobile situation would preclude him from attending the hearing.

The hearing went forward as scheduled on February 5, 2014, commencing just after 1:00 p.m.  Board members present included:

> Mark Sullivan, P.A.
> John H. Wheeler, D.O.
> Robert M. Vidaver, M.D.
> Louis E. Rosenthall, M.D.
> Gail Barba, Public Member
> Edmund J. Waters, Jr., Public Member

Gail Barba, Public Member, served as presiding officer.  Respondent did not appear, and Attorney Jeff Cahill appeared as hearing counsel.

### Discussion and Rulings

It is first necessary to discuss Respondent's request for a stay and his decision not to attend the hearing.  Regardless of the procedural irregularities concerning Respondent's request to stay the proceeding sent via e-mail on January 29, 2014 the Board finds substantively, the rational for the request to be both lacking in factual detail and unpersuasive.  The issue before the Board is a narrow one.  It revolves around whether Respondent violated RSA 329:17, VI (a) by failing to disclose, in 2011 on the residency training application and supplement, his attendance and dismissal from the Keck School of Medicine.  The fact that Respondent named the Board in a federal lawsuit that is currently pending is of no moment in the determination of that issue. Moreover, pursuant to RSA 329:17, IX, no civil action shall be maintained against the board with regard to any activity or action taken in the performance of its statutory duties.  *See* RSA 329:17, IX.  The Board thus determined it was appropriate to proceed.

4

The Board finds that timely notice had been provided to the Respondent with regard to the hearing. Here, where Respondent had over four months to prepare and attend or timely ask for a continuance, his eleventh hour request to stay the proceeding was without merit. Had there been some legitimate medical reason that had been articulated by the Respondent, the Board would have given that issue consideration. Respondent, however, simply indicated that he had medical reasons that precluded him from driving to New Hampshire, which he then did not reassert on February 5, 2014 when he provided notice that he would not attend the hearing, citing instead to weather conditions and automobile issues. Petitioner provided no reasonable grounds for continuing the hearing, nor did he ask for reconsideration, indicating that weather - given the forecast - would prevent him from attending.

The Board opened the hearing just after 1:00 p.m. on February 5, 2014. It first entered Exhibits A and B, Respondents e-mails dated January 29 and February 5, as exhibits for Respondent. It also accepted Exhibits 1-3 from hearing counsel. Exhibit 1 is Respondent's 2011 NH Application for Residency Training License; Exhibit 2 is an excerpt of a March 1, 2007 court order in *Isaacs v. USC*; and Exhibit 3, the April 2008 Confidential Settlement in *Isaacs v. USC.* These exhibits along with notice of witnesses to be presented were provided to Respondent on January 31, 2014.

Hearing counsel also presented the testimony of Dori Lefevbre, Board Investigator. Ms. Lefevbre testified that she was able to obtain the documents that were marked as exhibits 2 and 3 as public records available on-line from the federal court system. She explained that the documents reflect that Respondent was dismissed from the Keck School. In fact, Exhibit 2, the California Federal District Court, Central District's Order on a Motion to Dismiss reveals that Respondent alleged he suffered from PTSD and an organic brain injury and in 2005 began his

5

studies at Keck School of Medicine.  The Order further indicates that Respondent had numerous social problems with his classmates and engaged in offensive messaging to a female classmate that Respondent attributes to his Bipolar II diagnosis.  The Order indicated Respondent alleged that several defendants attempted to harm his standing at USC, that Respondent attended a disciplinary hearing before the Student Performance Committee – where he did not contest stalking allegations against him; and that he was suspended and ultimately dismissed from the school.  The Order at Exhibit 2 also indicated that Plaintiff requested that USC postpone the dismissal hearing scheduled for June 7, 2006, but that the hearing went ahead as scheduled.

Ms. Lefevbre also testified that she obtained Exhibit 3, as a public court record from the federal court's on-line system, which purportedly is the confidential settlement agreement between Respondent and USC.  The document at page 1, indicates that Respondent understood and agreed "that his education at USC has ended irrevocably and forever and will not be resumed again at any time in the future."

In Exhibit A, Respondent alleges that the settlement agreement with USC "clearly sealed [his] disciplinary records, and a subsequent agreement annulled all contracts and acquitted all controversies with USC."  It appears this is the reason Respondent contends he was not required to disclose the Keck School information on his training license application.  A review, however, of Exhibit 3 indicates that it is only information related to the lawsuit, and the negotiation of the Settlement Agreement's terms and conditions that is confidential, along with the monetary settlement amount.  There is no provision in Exhibit 3 "sealing the disciplinary records."

Exhibit 1, page 4 asks whether the applicant has been "reprimanded, sanctioned, restricted or disciplined in any activities involving medical education…" and Respondent certified, under penalty of perjury that he had not, where he marked "No" to the question.

Whether Respondent entered into a settlement agreement does not negate the fact that he attended a medical educational institution which ultimately dismissed him and will never allow him to return. The fact remains that there was discipline and expulsion from a medical educational institution notwithstanding the representation that the records have been sealed or a subsequent agreement "annulled all contracts." That Respondent brought a lawsuit against USC, which the parties settled and where USC specifically denied liability for the claims against it does not immunize Respondent from answering the application question truthfully.

The question on the application did not require Respondent to divulge information regarding the Confidential Settlement Agreement. The answer in the license application was, however, required to be correct. Respondent could have chosen to say, "Yes" which would have likely given him an opportunity to explain; or he could have indicated that he contends he was wrongfully dismissed.

RSA 329:17, IV (a) reads that disciplinary action may be taken against a licensee where the Board finds the person "has knowingly provided false information during any application for professional licensure… whether by making any affirmative statement which was false at the time it was made or by failing to disclose any fact material to the application." The Board finds that Respondent was required to truthfully divulge an answer to question 3 on the supplement to the application. The Board also finds that Respondent was required to list all medical schools attended. The application form and the supplement do not distinguish and inform the applicant that an answer is not required if some record was sealed or records were nullified by operation of law.

Here, Respondent was aware that he attended the Keck School, he was further aware that he was "sanctioned" or "restricted" or "disciplined" in "activities involving medical education."

7

As such, Respondent deliberately, consciously, and with purpose of design answered question 3 falsely.  Likewise, it is a material fact that Respondent attended a medical school other than American University of the Caribbean.  Inaccuracies in the information provided which are false, constitute a valid basis for discipline and license denial.

In this case, we need not take action on the license itself since pursuant to N.H. Admin R. Med 305.04(b) training licenses are only valid for the practice of medicine when *inter alia* the licensee is practicing under the auspices of the training program.  *See* N.H. Admin R. Med 305.04 (b) (1).  Here, there was evidence that the DHMC terminated Respondent from their Program.  Accordingly, the license is revoked as of the date of termination; as such it was canceled by operation of law.

We, however, believe a reprimand is appropriate in this situation.  Respondent treated his time at the Keck School as if it never occurred.  He provided no documents to suggest or provided no credible evidence regarding the dissolution of his record of attendance at the Keck School.  Even where Respondent chose not to attend the hearing, he still could have provided documentary support for his position in advance of the hearing.  N.H. Admin. R. Med 206.09 (c).  For example, he could have submitted his exhibits supporting the statements found in Exhibit A, but chose instead an alternate course of action.  Exhibit 3 certainly does not suggest the nullity of the sanction or discipline, where Exhibit 2 clearly evinces Respondent was dismissed from the medical school on June 13, 2006.[1]  We find this Agreement does not insulate Respondent from having to affirmatively disclose his attendance.  As such, where we also find the evidence submitted supports the conclusion that Respondent knowingly made a false statement and further

---

[1] Exhibit 2 does indicate that on June 22, 2006 Respondent appealed the decision asking for a reversal. Exhibit 3, at paragraph 19 references the potentiality of effecting the dismissal of all outstanding administrative charges. There, however, is no credible evidence before this Board which suggests Respondent's termination from the school was dismissed.  Further we are aware of no New Hampshire requirement that would equate a civil settlement to the annulment of a criminal record pursuant to RSA 651:5, X.

8

 Gmail

Jeffrey D I <jeffreydi@gmail.com>

## Re: hey
1 message

**Scot** ███████████████████                    Tue, Feb 7, 2012 at 7:31 PM
To: jeffrey.isaacs.wg03@wharton.upenn.edu

Alright -- I just hope you're not pinning too much on this. My read of all this is that USC -- expert in the medical training /standards -- threw down a spike that they knew was going to be a long term impediment.  I've not read what Dartmouth asked you to disclose, but I am sure it's broadly worded and based on fact (rather than legal disposition).

I'm in Detroit. Boarding plane for Ft Wayne. ███████████████████
F. Scot



>
>

19-cv-2011 Isaacs v. USC   Amended Complaint Exhibits Page 63



# Dr. Peter J. Katsufrakis Appointed President of National Board of Medical Examiners (NBME)

PHILADELPHIA, PA January 30, 2017 -- Following a national search, the Executive Board of the National Board of Medical Examiners has selected Peter J. Katsufrakis, MD, MBA to lead the NBME as its next president. The NBME, which creates and administers a wide range of health professions assessments and assessment tools, is best known as the creator and co-sponsor of the United States Medical Licensing Examination® (USMLE®), which all medical doctors must pass to be licensed to practice in the U.S. The appointment of Dr. Katsufrakis as president will be effective January 30, 2017 upon the retirement of Donald E. Melnick, MD, who has led the NBME since 2000.



Dr. Katsufrakis with his partner, Shathi Abdulrab.