Dr. Jeffrey Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS<br><br>    Plaintiff,<br><br>    vs.<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER<br>GEISEL SCHOOL OF MEDICINE AT DARTMOUTH<br>USC KECK SCHOOL OF MEDICINE<br>NH BOARD OF MEDICINE;<br><br>and JOHN or JANE DOE,<br><br>    Defendants. | Case 2:19-CV-02011-DSF-RAO<br><br>**PLAINTIFF'S NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION; MEMORANDOM OF POINTS AND AUTHORITIES**<br><br>**<u>Hearing</u>**<br>Date:    September 9, 2019<br>Time:    1:30 PM<br>Location:  Courtroom 7D<br>Judge:   Hon. Dale S. Fischer |

# NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:30PM on September 9, 2019, or as soon thereafter as possible, in Courtroom 7D of the United States District Court for the Central District of California at First Street Courthouse, 350 West 1st Street, Los Angeles, Plaintiff Jeffrey Isaacs will and hereby does move the Court to issue a Preliminary Injunction preventing the dissemination of sealed and annulled academic records stemming from Plaintiff's Class of 2009 MD enrollment at USC Keck.

MOTION FOR PRELIMINARY INJUNCTION

The Plaintiff now moves the United States District Court for the Central District of California to issue a preliminary injunction restraining Defendants from actively or passively disseminating Keck School of Medicine records that are subject to two federal court settlement agreements. The First Amended Complaint filed on July 19, 2019 serves as the operative complaint for this motion. The operative complaint is incorporated herein in its entirety; each and every fact, allegation, and/or claim stated in the First Amended Complaint shall be considered legally pleaded and asserted via this motion. Additionally, this motion is based upon any and all documents filed in this action, and evidentiary materials to be presented at the hearing.

                                          Respectfully submitted, this 1st day of August, 2019.

                                          /s/ Jeffrey Isaacs

                                          Dr Jeffrey Isaacs

                                          3553 West Chester Pike Unit 177

                                          Newtown Square, PA 19073

                                          Plaintiff, *pro se*

# MEMORANDOM OF POINTS & AUTHORITIES IN SUPPORT OF MOTION FOR PRELIMINARY INJUNCTION

**FACTUAL BACKGROUND**

Plaintiff enrolled in the Keck School of Medicine Class of 2009. By the end of his first semester, a dispute occurred whereby Plaintiff alleged admissions corruption and additional abuses of power by the Keck Deans. The Deans retaliated by separating Plaintiff from the university for, specifically, sending an apology letter to a classmate. The classmate wrote the Deans politely requesting that a suspension, let alone separation, be taken off the table as it "did not sit right" in light of the alleged infraction.

<u>Plaintiff was blocked from filing criminal charges against USC Deans</u>

Upon separation, USC issued a no trespassing letter to Plaintiff and posted a university wide alert, containing a mugshot like photo of Plaintiff. Plaintiff was ordered to use USC Counsel as a conduit for any communication with any USC student or faculty or employee. Around August 2006, Plaintiff requested USC Counsel forward his criminal complaints to USC Police so that charges could be pressed. A year later, he complained to USC counsel for not responding and running out statutes of limitations on some misdemeanor charges (See *Preliminary Injunction Evidence Exhibits*). USC Counsel re-routed his request for USC Police involvement some twenty times over the course of the year. Plaintiff emailed saying he "would fill out any additional forms needed" to press charges, but USC Counsel never responded. To this day, USC has not retracted the no trespassing letter or mugshot alert. [1]

---

[1] An attempt to clarify the status of the criminal charge request and no trespassing letter was made on July 26 2019 to USC Counsel. Counsel responded they "don't know what [Plaintiff] is talking about."

## The Individual Settlement's only consideration for Plaintiff was Factual Innocence

Within a week of Plaintiff's demand for criminal investigation, USC authored an Individual Settlement agreement meant to allow both Plaintiff, and the Deans, to move forward with their medical careers. The agreement was meant to "seal and clear" Plaintiff's records (See FAC). This was the only consideration granted to Plaintiff. On the other hand, the Keck Dean's benefited from a broad waiver and release of claims. Specifically, claims of admissions corruption would be deferred at least a decade until the FBI embarked upon Operation Varsity Blues. Likewise, a pattern of felony misconduct by Keck Deans would not be exposed until Henderson & Katsufrakis' successor, Dr. Puliafito, would be found guilty of serious Schedule II felonies. Plaintiff complained the Dean was "predatory" and made unwanted comments that made him uncomfortable, including

> "*Here you are in my office caught with your pants down, so to speak.*"
>
> -Peter J. Katsufrakis, MD/MBA
>
> Former USC Keck Dean &
>
> President, National Board of Medical Examiners

Katsufrakis left USC later that year in 2007, and now is President of the National Board of Medical Examiners, whose mission is to protect the public by setting nationwide physician professionalism standards. In short, USC derived great benefit from Plaintiff's agreement to release claims and not contest USC Counsel blocking of his criminal claims.

## Decade long history of confusion and difficulty interpreting Keck Settlement Agreements

Plaintiff's mere compliance with the Settlement Agreements has come at a great cost to his career, health, and reputation. As detailed in the FAC, the Settlement Agreements have been interpreted by three different competent authorities in conflicting ways, resulting in nearly a decade of stressful administrative proceedings. Plaintiff maintains that both the plain text of the settlements, and their intent, 1) acquitted him of allegations that lead to

his separation, 2) released administrative charges that lead to his separation, 3) sealed his disciplinary records in the form of a factual innocence expungement, and 4) annulled his matriculation agreements. The AAMC and NHES exonerated Plaintiff and determined that the settlements provided factual innocence. The NH Board stated that no provision exists "sealing" Plaintiff's Keck records, and publicly shamed him by revealing the expunged Keck history. Conversely, the NH Board determined that Keck student records showed no evidence USC complied with their settlement obligation to release administrative charges.

The Dartmouth Defendants maintain likewise contradictory positions. Their Program Director testified under oath that she would accept the AAMC determination of factual innocence. In contrast, Dartmouth's legal pleadings vociferously claim that Plaintiff was dishonest for complying with the Settlement Agreements and maintaining confidentiality about the matter. Program Director Finn likewise testified that she found the Settlement Agreements confusing and difficult to interpret. Likewise, former World Bank President Jim Yong Kim apparently resigned in January 2019, in part due to his role in evidence spoliation, which ultimately stemmed from difficulty in interpreting the Settlement Agreements. Hence it appears Dartmouth Defendants would concede there exists a *bona fide*, ongoing legal question as to how to properly interpret the Settlement Agreements.

<u>NH Board default may be considered new information regarding their stance</u>
At time of filing this motion, the New Hampshire Board of Medicine is seriously in default in responding to the summons. The Board was properly served (See *Evidence Exhibits*) over a month ago. The Board is also currently a respondent in a petition for certiorari which clearly mentions the existence of this lawsuit. Under judicial notice of Supreme Court petition No. 18-1411, and the attached Proof of Service, the Court may determine that the NH Board is well aware of this controversy and has finally decided to accept that there is a provision in the Settlement Agreements that seals the Keck records.

## Conflicting competent authority determinations place Plaintiff in perpetual perjury trap

Plaintiff is now in a legal situation that requires declaratory review by the Court to prevent further damages. He continues to be required to answer about his time at Keck, frequently under the penalty of perjury. With opposing competent authorities, merely asserting any answer could be construed as good cause for perjury charges. This extends beyond the realm of medicine to international visa applications asking if Plaintiff has ever been disciplined, faced allegations of professional misconduct, etc. Similarly, should Plaintiff apply to volunteer organizations, teaching positions, education programs, political positions, or other non-medical applications, he would have to answer the same questions. Plaintiff sought the assistance of a well-regarded former AUSA federal prosecutor, Mr. Mark Josephs, to assist with this matter. Mr. Josephs filed an APA with the Department of Education, hoping that would resolve the controversy. Unfortunately, for jurisdictional reasons, the APA did not successfully resolve the matter. Josephs advised Plaintiff that USC Keck would have to be party to any effort to resolve the matter via declaratory judgment.

In April 2019, Attorney Keith Mathews attempted to resolve the matter with USC Keck. Mathews advised Keck that the Settlement Agreements had resulted in years of substantial legal confusion, and that there existed cause to believe Keck had never complied with their agreement to seal and acquit the Plaintiff. Mathews advised USC Counsel that litigation could be averted if they merely complied with the settlement and helped to mitigate the loss of Plaintiff's GME position which stemmed from Settlement Agreement interpretation difficulties. USC "declined" to comply with the settlements, discuss the difficulties, or otherwise participate in ADR or any further mediation. USC Counsel threatened "liquidated damages" against Plaintiff for merely seeking to discuss compliance with the Settlement Agreements or resolve the controversy in this Court.

Under California 525 Anti-SLAPP, such a strategic liquidated damages threat is prohibited absent USC's ability to show a clear likelihood of success.

<u>USC's recent pleadings disavow their responsibilities under the Settlement Agreements by faulting Plaintiff for non-disclosure of the expunged matter.</u>

The FAC describes a decades long enterprise meant to defeat the settlement agreements and retaliate against Plaintiff for his legal complaints, with John Doe serving as a link between Defendants. Evidence spoliation and perjury by the enterprise is also detailed in the FAC. Unfortunately, USC's role has clarified since the filing of the lawsuit and places them in active breach of the Settlement Agreement. They continue to blame Plaintiff for not disclosing his sealed & acquitted charges (See *FAC Exhibits),* acting as if the Settlement Agreements, formed over two years of scrutinized negotiation, never existed. In Keck's Motion to Dismiss Plaintiff's RICO claims, Keck asserts that RICO elements aren't met because a) Keck didn't do anything to Plaintiff in over a decade, and b) Plaintiff is at fault for not disclosing the Keck disciplinary records. The problem is, Keck's mere suggestion that Plaintiff has disciplinary records to disclose is false and constitutes a breach of the settlement agreement. Keck was required to acquit Plaintiff, seal records, and dismiss administrative charges. Keck's purported "not doing anything" is not a defense, and notices ongoing breach of the settlement agreements. USC had an obligation to acquit, seal & expunge Plaintiff's academic history. USC's pleadings now argue that the Plaintiff was never acquitted, in direct contravention of the Settlement Agreements.

<u>USC threats meant to avoid any substantive answer of the allegations</u>

As of a Local Rule 7 Meet & Confer last week, USC appeared to be engaging in motion practice and other improper techniques meant to further deprive Plaintiff the benefit of the Settlement Agreements. Specifically, USC noticed intent to block Plaintiff from achieving the clarity of a declaratory judgment in this case. Per the attached Exhibits, USC intends

to make false claims that the FAC was untimely filed – which is simply not the case. In addition to their false untimely filing claim, USC noticed a frivolous claim that Plaintiff's Declaratory Judgment request is barred by statute of limitations. It is unclear how USC can make this argument to the Court without violating FRCP 11. No reasonable person could deny there exists an ongoing *bone fide* dispute as to the Settlement Agreements. The FAC leaves no room to deny that, as a matter of law, contradicting authorities have created an untenable situation for Plaintiff, who could be faulted for disclosing, or not disclosing, Keck history, and moreover, who derived absolutely no benefit thus far from Settlement Agreements that terminated his earlier civil and criminal claims. Keck USC cannot have it both ways. Either the Settlement Agreements acquitted and exonerated Plaintiff, or they lacked consideration and prosecution of Plaintiff's civil and criminal charges must resume.

**ARGUMENT**

"A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Natural Res. Def. Council, Inc.,* 555 U.S. 7, 20 (2008). Alternatively, "serious questions going to the merits and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cotrell,* 632 F.3d 1127, 1135 (9th Cir. 2011) (internal quotation marks omitted). Plaintiff's motion qualifies on all four factors.

Plaintiff seeks an injunction that affirms the Declaratory Judgment claim in the FAC, and requires USC to stop publishing or maintaining student records that don't comply with the Settlement Agreements. Any USC records must clearly denote 1) that Plaintiff was acquitted of the allegations that caused his separation from the university; 2) that

administrative charges against Plaintiff were dismissed, 3) that Plaintiff is factually innocent of above allegations, and 4) that the matriculation contract was annulled.

Likelihood of success on the merits of Plaintiff's claims is apparent, as two independent competent authorities, the AAMC and NHES, have supported his interpretation of the Settlement Agreements. The Dartmouth Defendants, via Finn's testimony, have likewise concurred. The NH Board partially agreed with this interpretation, citing Keck's obligation to dismiss administrative charges. The Board also equated sealed records with NH RSA factual innocence standards, but peculiarly asserted it had no legal obligation to accept a factual innocence record seal. The NH Board disagreed with Keck's obligation to seal disciplinary charges, stating incorrectly "there is no provision sealing the records." There was no mandatory right of appeal of this incorrect determination by the Board. The Court may determine that the NH Board order is patently wrong, or order the Board, currently in default, to show good cause as to why its order is not false.

In addition, the vast majority of experts, including over a dozen attorneys, concurred with Plaintiff's interpretation of the Settlement Agreements. Furthermore, the plain text of the Settlement Agreements and the entire negotiation history are presented in the FAC. Discovery is unlikely to yield anything that would alter the plain text or negotiation history. The overwhelming majority of evidence demonstrates that the Plaintiff is likely to succeed on his claims that his Keck records were acquitted, dismissed, sealed and annulled by the Settlement Agreements.

<u>Irreparable harm to Plaintiff is virtually certain absent an injunction</u>
Without a preliminary injunction, Plaintiff is almost certain suffer irreparable harm. As discussed above, nearly any application to a school, teaching, or political position, or any international visa / immigration application could amount to cause for perjury charges, i.e., a "perjury trap." Denial of any of these applications would cause further career or

personal loss. Assuming a permanent injunction could be issued in two years at a jury trial, Plaintiff would lose any remaining chance to pursue his dream of practicing medicine. He has already been improperly denied GME training for nearly a decade. Any additional delays could surpass the reasonable amount of time and age factors to pursue his neurosurgery specialty. It takes at least seven years to train to be a neurosurgeon, and at some point, no reasonable person would deny that a delay of twelve+ years in court prohibits this pursuit. This is truly a case of justice delayed justice denied. Indeed, many GME programs have statutory five-year limits on commencing upon receipt of a medical diploma. Plaintiff is already at nine years. Furthermore, many GME programs require that an applicant pass all three NBME USMLE exams within ten years prior to application. Plaintiff passed the third NBME USMLE exam in 2011. This exam series typically takes four years to complete during medical school studies. Hence Plaintiff may soon need a total of eleven years to complete neurosurgery applications and GME training. Again, no reasonable person could deny that further delays to this timeframe renders Plaintiff's goal of becoming a board certified neurosurgeon all but impossible.

The mere fact that USC Keck has asserted in recent pleadings that no such agreement exists increases the certain damage to the Plaintiff. The ongoing public and official disclosure of these records by USC Keck continually causes the Plaintiff irreversible damage. The Parties were aware that irreparable harm would befall the Plaintiff if these records were disclosed, which is why they went through the effort of negotiating and draft extensive agreements to that effect. The stress caused by delaying ones career, life goals, and personal developments by a decade is immeasurable. Defendants' reckless attempts to assassinate Plaintiff's career, reputation, and health must be stopped by the Court. Monetary damages simply cannot repair lost career dreams and decades of reputational damage, nor can they reverse stress injuries which have already accumulated over fourteen years in Plaintiff's case.

### Cost burden to USC Keck of injunction compliance is negligible

The cost to USC of complying with the settlement is minimal. It is estimated correcting the academic records at the registrar's office would take approximately one hour. To the extent USC must research clearinghouse records not under their full custody & control, such as NBME, LCME, FSMB, ACGME and/or AAMC/ERAS clearinghouse repositories, it is estimated these clearinghouse database records could be corrected in one business day. Plaintiff is willing to post a bond, until the time a jury enters a preliminary injunction, covering the cost of USC's compliance and research of said clearinghouses. Hence, USC's cost to comply with the injunction is practically zero. Contrasted to Plaintiff's permanent damages described above, the balance of equities certainly tips in Plaintiff's favor here.

### Clear public interest exists to enforce court settlement integrity & motivation to settle

Finally, the Court may issue the preliminary injunction in light of a public interest. Under the FRCP and All Writs Act, the Court has inherent authority to uphold its own settlement agreements. Enforcing its own Settlement Agreements with scrutiny fosters and encourages future litigants to settle cases. Should the enforcement of settlement agreements break down, as has happened here, the courts would be overwhelmed with litigants who refuse to settle, out of fear of suffering the same fate as Plaintiff has suffered. Furthermore, enforcement guarantees that one party doesn't unfairly benefit at the other's expense. Here, USC obtained a dismissal of charges, civil and potentially criminal, that would be exposed fourteen years later by the FBI and other authorities. Plaintiff, on the other hand, has suffered irreparable harm to his health and career, deriving absolutely no benefit thus far from the Settlement Agreements.

### Both Serious Question and Sliding Scale thresholds met in this injunction

Per *Winter v. Natural Resources Defense Counsel, Inc*, 555 US 7 (2008) the granting of injunction requires the Court find irreparable harm must be likely, not just possible. That

is certainly the case here, where Plaintiff is suffering ongoing stress, reputational harm, and permanent career loss that would not be remedied by monetary redress. The Ninth Circuit has accepted both "serious question" as well as "sliding scale" approaches post-*Winter*. *Alliance for the Wild Rockies v. Cottrell*, 632 F. 3d 1127, 1131-32 (9th Cir 2011). The Court in that case found that "serious questions going to the merits" and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." Id. at 1135 citing. *Miller v. Gammie*, 335 F.3d 889, 900 (9th Cir. 2003). As discussed throughout this pleading the Plaintiff has presented a serious question, confirmed by multiple conflicting competent authorities, going to the merits. The hardship on the Defendant would be close to nil, under the serious question approach the Plaintiff's request for an injunction must be granted. He has shown a likelihood of irreparable harm if the injunction is not granted, and the actions of USC Keck during this litigation show that harm will befall the Plaintiff during this litigation that will be cumulative and irreversible.

<u>Issuance of the Alternative Proposed Order may be appropriate</u>

In the unlikely event Defendants' response to this motion provides a compelling argument that Plaintiff's Keck disciplinary records were neither sealed nor acquitted nor dismissed nor annulled, the Court is moved to issue the Alternative Proposed Order. In this instance, it would be clear Plaintiff entered into a one-sided hush agreement, with no consideration assigned to him in the settlement bargaining process. The hush agreement shall be voided and Plaintiff's civil and criminal charges against Keck shall proceed.

Respectfully submitted, this 1st day of August, 2019.

                                              /s/ Jeffrey Isaacs

                                              Dr Jeffrey Isaacs

                                              3553 West Chester Pike Unit 177

                                              Newtown Square, PA 19073

                                              Plaintiff, *pro se*

# CERTIFICATE OF SERVICE

I, Dr. Jeffrey Isaacs, do declare as follows:

I certify that a copy of the foregoing **NOTICE OF MOTION AND MOTION FOR PRELIMINARY INJUNCTION** was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 1st day of August, 2019.

/s/ Dr Jeffrey Isaacs

Dr Jeffrey Isaacs

Plaintiff, *pro se*