Dr. Jeffrey Isaacs
3553 West Chester Pike Unit #177
Newtown Square, PA 19073

IN THE UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| DR. JEFFREY ISAACS | |
| Plaintiff, | Case 2:19-CV-02011-DSF-RAO |
| vs. | **PLAINTIFF'S NOTICE OF MOTION TO AMEND** |
| DARTMOUTH HITCHCOCK MEDICAL CENTER | |
| GEISEL SCHOOL OF MEDICINE AT DARTMOUTH | |
| USC KECK SCHOOL OF MEDICINE | |
| NH BOARD OF MEDICINE; | |
| and JOHN or JANE DOE, | **Hearing** |
| Defendants. | Date: October 7, 2019 |
| | Time: 1:30 PM |
| | Location: Courtroom 7D |
| | Judge: Hon. Dale S. Fischer |

# MOTION TO AMEND

TO ALL PARTIES AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE that at 1:30PM on October 7, 2019, or as soon thereafter as possible, in Courtroom 7D of the United States District Court for the Central District of California at First Street Courthouse, 350 West 1st Street, Los Angeles, Plaintiff Jeffrey Isaacs will and hereby does move the Court for Leave to Amend and file the Second Amended Complaint.

MOTION FOR PRELIMINARY INJUNCTION

The Plaintiff now moves the United States District Court for the Central District of California to grant leave to amend and file the Second Amended Complaint.

Respectfully submitted, this 27th day of August, 2019.

Pursuant to Federal Rules of Civil Procedure 15, a party may amend its pleading only with the opposing party's written consent or the court's leave. The court should freely give leave when justice so requires. On August 20th 2019, Plaintiff emailed opposing counsel for all parties seeking consent to amend, or "in the alternative, [proposed times] to Meet & Confer under 7-3." No parties were willing to Meet & Confer. Counsel for USC responded it will "seek Rule 11 sanctions against [Dr Isaacs] should [he] file this or any other complaint against USC." Plaintiff waited three weeks after making an initial, related request for a Meet & Confer with USC. In short, by refusing to comply with 7-3, USC counsel blocked Plaintiff from being able to file a Motion to Strike their Motion to Dismiss (see below), or timely file this Motion for Leave to Amend.

Per chamber's order, this noticed motion is being filed without having complied with Rule 7-3.

Counsel's refusal to follow Rule 7-3 to properly object to this SAC amendment, which should otherwise be freely granted, should be regarded by this Court as consent to the lodging of the Second Amended Complaint.

For the convenience of all parties, the two fundamental differences between the Second Amended Complaint and the preceding Amended Complaint are hereby identified:

a) the SAC raises legal objections against USC Counsel for issuing a permanent, or at least fourteen years, campus ban against the Plaintiff without affording him any due process. This matter was raised in the pending Motion for Preliminary Injunction, and as stated therein, could place Plaintiff in danger if he needed medical attention in Los Angeles. It also violates his First Amendment rights to speak, assemble, or otherwise attend in liberty USC public functions that may be attended or hosted by his friends, family, etc. While Plaintiff voluntarily agreed in 2008 not to apply to academic programs at USC, he never consented to such degrading and intimidating ban from the greater Los Angeles community. This ban is a nothing but an attempt to intimidate him as a federal witness and prevent him from moving forward with claims against USC. It could also interfere with commerce as Plaintiff operates a startup that has served one hundred million users and USC routinely hosts internet industry conferences. An estimated 500-2000 USC students and faculty use Plaintiff's service; restricting his ability to offer on-site support or services likewise restricts commerce.

B) the SAC includes a critically important document (*SAC Exhibits* Page 100) that Plaintiff only recently discovered in 2019. The document, the "AAMC profile," has been in Plaintiff's Keck student file since 2006, but was intentionally withheld from a discovery request in 2008, in which Plaintiff's entire Keck SOM student file was

supposed to be produced for discovery in 06-CV-3338-GAF. The ramifications of this omission are obvious: Keck was in breach of their 2007 settlement agreement as soon as it went into effect, and they hid this fact from Plaintiff in order to coerce him into signing the 2008 global settlement agreement. The document wholly defeated the sealing of Plaintiff's KSOM records, which was the only consideration afforded to Plaintiff in the 2007 settlement. Hiding this document reasonably and foreseeably lead to the chaos that ensued when Plaintiff graduated medical school and entered a residency program at Dartmouth, ultimately leading six months of further mistreatment, widespread evidence destruction, and ultimately, the resignation of the President of the World Bank.

These two SAC inclusions place clear start and end date delineations on Plaintiff's RICO claims. Namely, predicate acts of evidence tampering began no later than 2008, when Keck hid the AAMC profile from discovery. Open-ended threats by USC counsel in the form of 1) an improper campus ban, and 2) an unwillingness to correct the 2007 breach, form the ongoing terminus of the open-ended RICO predicate acts.

In light of this new information, USC cannot credibly seek a 12(b)(6) dismissal on any contract claims, as they are equitably estopped from raising statutes of limitations claims because they actively concealed evidence (the AAMC profile) and took steps to prevent plaintiff from learning of their breach. Indeed, the vast evidence will show that Plaintiff was "in the dark" of this breach as he continued diligently with his medical studies, only to be mocked and ridiculed by institutions who plainly observed that the Keck disciplinary records had never been sealed.

Defendants have a fourteen-year history of executing predicate acts that violate federal obstruction of justice regulations. They withheld evidence from discovery in 2008. They deleted volumes of emails in 2012. As of 2019, they refuse to comply with two court

ordered Settlement Agreements, and they actively are harming Plaintiff through an improper campus ban. They refuse to comply with 7-3, necessitating this Notice.

These two additions to the SAC should be allowed because 1) Plaintiff just discovered the AAMC profile concealment, and 2) Plaintiff is the active target of improper campus ban issued only last month against him, with no semblance of any due process.

As noted above, Plaintiff could not timely file a Motion to Strike Defendants' 12(b)(6) motion, because opposing counsel would not grant him a 7-3 Meet & Confer. The Motions to Dismiss improperly relied upon judicial notice of a flawed 2014 USDC New Hampshire ruling. Such extensive entry into the record of spoliated evidence, and a subsequent ruling, defeats the purpose of Plaintiff's complaint, which alleges predicate acts including email destruction and evidence tampering resulted in an incorrect, unjust outcome in the 2014 case. A Motion to Dismiss must accept the basic underlying claims favorably to Plaintiff; here, the Defendants simply ignored Plaintiff's entire RICO claim by extensively quoting a flawed ruling. In the event this Motion to Amend is denied, Plaintiff seeks leave to file a Motion to Strike the Motions to Dismiss.

Of interest, the Defendants did not seek judicial notice of US Western Texas case 14-012, in which the Honorable Xavier Rodriguez found good cause, namely a *bona fide* claim of evidence fraud and perjury, to proceed with a PACER meta-data investigation. Likewise, Defendants did not seek judicial notice of 18-cv-10886 in the Massachusetts USDC. In that case, Plaintiff voluntarily dismissed the case, without prejudice, after he was satisfied that at least one branch of the United States Government had listened to his complaints alleging evidence destruction by the former World Bank President Jim Yong Kim, and that the complaints ultimately resulted in appropriate redress, namely, his resignation.

In sum, Defendants wish to convince the Court that nothing in this case has changed since the 2012 filing of 12-cv-040 in NHD; this is simply not true and the circumstances dictate that Plaintiff's ongoing claims are not subject to *res judicata*. New information has become available. Defendants has continued with oppressive and retaliatory behavior.

The ongoing discovery of evidence and progression of related cases invoke equitable tolling of any statues of limitations, and estops such claims due to fraudulent concealment on the part of the Defendants. Should Defendants wish to refile a 12(b)(6) against the Second Amended Complaint, it will become increasingly clear that Defendants are avoiding any substantive answer in this lawsuit.

Finally, it is of note that Defendant NH Board of Medicine has not yet answered the original complaint, and no trial is calendared, so the filing of a Second Amended Complaint does not delay the case. The additional detail and focus of claims raised in the SAC is likely to expedite discovery and avoid a frivolous 12(b)(6) motion.

The Court should freely grant the requested leave. The defendants will not be prejudiced with a more definitive claim such as the SAC. Morever, the SAC in all likelihood will avert the need to dedicate Court resources to what would be a frivolous Motion to Dismiss and move the case forward to the long overdue point of a substantive answer by Defendants.

Respectfully submitted, this 27th day of August, 2019.

/s/ Jeffrey Isaacs

Dr Jeffrey Isaacs

3553 West Chester Pike Unit 177

Newtown Square, PA 19073

Plaintiff, *pro se*

Isaacs v. Dartmouth, USC et al
Case No. 19-CV-02011-DSF

# CERTIFICATE OF SERVICE

I, Dr. Jeffrey Isaacs, do declare as follows:

I certify that a copy of the foregoing **MOTION TO AMEND AND FILE SECOND AMENDED COMPLAINT** was delivered electronically to counsel for the Defendants with counsel, and emailed to those without known counsel.

Executed on this 27th day of August, 2019.

/s/ Dr Jeffrey Isaacs

Dr Jeffrey Isaacs

Plaintiff, *pro se*