**AKERMAN LLP**
Kanika D. Corley (SBN 223607)
*kanika.corley@akerman.com*
601 W. Fifth Street, Suite 300
Los Angeles, CA 90071
Telephone: (213) 688-9500
Facsimile:  (213) 627-6342

Lawrence M. Edelman (*pending pro hac vice*)
Assistant Attorney General
*Lawrence.Edelman@doj.nh.gov*
Civil Bureau
**N.H. Department of Justice**
33 Capitol Street
Concord, NH  03301-6397
Phone No:  (603) 271-1418
Fax No:  (603) 271-2110

Attorneys for Defendant
NEW HAMPSHIRE BOARD OF MEDICINE

**UNITED STATES DISTRICT COURT**

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| DR. JEFFREY ISAACS,<br><br>                    Plaintiff,<br><br>v.<br><br>DARTMOUTH HITCHCOCK MEDICAL CENTER, GEISEL SCHOOL OF MEDICINE AT DARTMOUTH, USC KECK SCHOOL OF MEDICINE, NH BOARD OF MEDICINE (individually) AND JOHN OR JANE DOE, ,<br><br>                    Defendants. | CASE NO. 2:19-cv-02011-DSF-RAO<br>The Hon. Dale S. Fischer<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION TO SET ASIDE DEFAULT**<br><br>Date:          October 21, 2019<br>Time:          1:30 p.m.<br>Courtroom:  7D<br><br>Complaint Filed: March 18, 2019 |

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

50120157;1

# TABLE OF CONTENTS

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND .................................................................................... 1

I.    THE NEW HAMPSHIRE BOARD OF MEDICINE ..................................... 1

II.   PLAINTIFF'S ALLEGATIONS ...................................................... 2

THE STANDARD OF REVIEW ............................................................... 3

ANALYSIS ........................................................................................ 5

    A.    "Good Cause" Exists to Set Aside the Default Because Service of Process Was Not Properly Made. ................................................ 5

    B.    Good Cause Exists to Set Aside the Default Because, Under the Eleventh Amendment, This Court Lacks Subject Matter Jurisdiction to Adjudicate an Action Against the New Hampshire Board of Medicine................................................................ 9

    C.    The New Hampshire Board of Medicine Did Not Engage In Culpable Conduct.............................................................. 12

    D.    The New Hampshire Board of Medicine Has Meritorious Defenses. .................................................................... 13

    E.    Lifting The Default Will Not Prejudice The Plaintiff....................... 15

III.  CONCLUSION ....................................................................... 16

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

50120157;1

i

# <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Adams v. Sullivan*,
  110 N.H. 101 (1970) ................................................................................ 8

*Arthur Court Designs, Inc. v. Jensen*,
  No. C–09–0584 EMC, 2009 WL 2157544 (N.D. Cal. July 20, 2009)
  (unpublished) ........................................................................................... 4

*Bair v. Krug*,
  853 F.2d 672 (9th Cir.1988) ................................................................ 12, 14

*Banks v. ACS Educ.*,
  No. 10cv1886–BTM (CAB), 2011 WL 811601 (S.D. Cal. Mar. 2,
  2011) (unpublished) ................................................................................. 4

*Benny v. Pipes*,
  799 F.2d 489 (9th Cir.1986) ...................................................................... 4

*Butcher's Union Local No. 498, United Food & Commercial Workers v.
  SDC Inv., Inc.*,
  788 F.2d 535 (9th Cir. 1986) ................................................................... 14

*Committee to Protect Our Agricultural Water v. Occidental Oil & Gas
  Corp.*,
  235 F. Supp. 3d 1132 (E.D. Cal. 2017) ................................................... 12

*Ingraham v. Wright*,
  430 U.S. 651 (1977) ................................................................................ 15

*Isaacs v. Arizona Bd. Of Regents*,
  608 Fed. Appx. 70 (3d Cir. 2015) ............................................................. 2

*James v. Scribner*,
  415 Fed. Appx. 835 (9th Cir.2011) ........................................................... 4

*Mason v. Genisco Tech. Corp.*,
  960 F.2d 849 (9th Cir. 1992) ................................................................ 3, 8

*O'Connor v. Florida Bar*,
  2006 WL 8444518 (D.N.M. Feb. 13, 2006) ............................................. 4

ii

50120157;1

AKERMAN LLP

601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

*Obi v. Exeter Health Resources, Inc.*,
    2018 WL 5905125 (D.N.H. Oct. 29, 2018) ............................................................ 11

*Pennhurst State Sch. & Hosp. v. Halderman*,
    465 U.S. 89 (1984) ........................................................................................... 12, 14

*Polaski v. Colo. Dept. Transp.*,
    198 Fed. Appx. 684, 2006 WL 2147526 (10th Cir. Aug. 2, 2006) .................... 4, 12

*Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*,
    506 U.S. 139 (1993) ......................................................................................... 12, 14

*U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*,
    615 F.3d 1085 (9th Cir. 2010) ...................................................................... 3, 13, 15

*Van Dyke v. N. Leasing Sys., Inc.*,
    No. CIV.S. 07–1877 FCD GGH PS, 2009 WL 1396193 (E.D. Cal.
    May 14, 2009) (unpublished) *adopted by* 2009 WL 2044254 (E.D.
    Cal. July 13, 2009) ............................................................................................... 4

*Warren v. City of Grass Valley*,
    No. 2:10–CV–1650–JAM–EFB, 2011 WL 596707 (E.D. Cal. Feb.9,
    2011) (unpublished) ............................................................................................. 4

*Yan v. General Pot, Inc.*,
    78 F. Supp. 3d 997 (N.D. Cal. 2015) ............................................................. 12, 13

**Statutes**

42 U.S.C. § 1983 ....................................................................................... 3, 12, 14, 15

N.H. Rev. Stat. Chapter 541-B ............................................................................... 9

N.H. Rev. Stat. § 2, II(a) ......................................................................................... 1

N.H. Rev. Stat. § 2, II(b) ......................................................................................... 2

N.H. Rev. Stat. § 21-M:2 ......................................................................................... 6

N.H. Rev. Stat. § 99-D:1 .................................................................................. 2, 9, 11

N.H. Rev. Stat. § 329:1-aa ................................................................................. 1, 10

N.H. Rev. Stat. § 329:2 ........................................................................................... 10

N.H. Rev. Stat. § 329:2, II ....................................................................................... 9

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX (213) 627-6342

iii

50120157;1

N.H. Rev. Stat. § 329:2, III ........................................................................................... 1

N.H. Rev. Stat. §§ 329:2-9-g ......................................................................................... 1

N.H. Rev. Stat. § 329:4, II ........................................................................................... 11

N.H. Rev. Stat. § 329:9, II, IV-V ................................................................................ 10

N.H. Rev. Stat. § 329:17, IX .......................................................................... 2, 9, 11, 14

N.H. Rev. Stat. § 329:17-b .......................................................................................... 11

N.H. Rev. Stat. § 329:18, II ......................................................................................... 11

N.H. Rev. Stat. § 491:8 ................................................................................................ 10

N.H. Rev. Stat. § 510:2-a .............................................................................................. 8

N.H. Rev. Stat. § 541-B:1, I .......................................................................................... 1

N.H. Rev. Stat. § 541-B:1, et seq. .................................................................................. 2

N.H. Rev. Stat. § 541-B:9 ........................................................................................ 2, 15

N.H. Rev. Stat. § 541-B:13 ............................................................................................ 9

N.H. Rev. Stat. § 541-B:14 ............................................................................................ 9

**Rules**

Fed. R. Civ. P. 4 ........................................................................................................ 1, 5

Fed. R. Civ. P. 4(j) ............................................................................................... passim

Fed. R. Civ. P. 4(m) .................................................................................................. 5, 14

Fed. R. Civ. P. 12(h)(3) ................................................................................................. 4

Fed. R. Civ. P. 55(a), (c) ............................................................................................... 3

Fed. R. Civ. P. 55(c) ............................................................................................. 1, 3, 4

**Other Authorities**

N.H. Const. Part II, Articles 3 .................................................................................... 10

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

50120157;1

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**AKERMAN LLP**
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Gordon J. MacDonald, Weibusch on New Hampshire Civil Practice and
Procedure § 10.19 *Service of Process on State Government Officials
and Agencies—Generally* (4th Ed. 2014) .................................................. 6

Gordon J. MacDonald, Weibusch on New Hampshire Civil Practice and
Procedure § 10.22 *Service of Process on Agency, Board, or
Commission* (4th Ed. 2014) ....................................................................... 6

Gordon J. MacDonald, Weibusch on New Hampshire Civil Practice and
Procedure § 10.24 *Accepting Service of Process* (4th Ed. 2014) ............. 6

AKERMAN LLP

601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

## PRELIMINARY STATEMENT

On August 28, 2019, the clerk entered a default against the New Hampshire Board of Medicine (the "Board") in this matter. ECF Doc. # 53. Good cause exists to set aside the default under Federal Rule of Civil Procedure 55(c) for several reasons. First, the plaintiff has not properly served the Board pursuant to Federal Rule of Civil Procedure 4. Second, this Court is without subject matter jurisdiction to adjudicate the plaintiff's claims against the Board. Third, the default was not the consequence of culpable conduct by the Board. Fourth, the Board has numerous meritorious defenses. Fifth, by setting aside the default, the Court will not prejudice the interests of the plaintiff. Accordingly, for all of the above reasons, and as explained in further detail in this memorandum of law, the New Hampshire Board of Medicine respectfully requests that the default against it be set aside pursuant to Federal Rule of Civil Procedure 55(c).

## BACKGROUND

### I.   THE NEW HAMPSHIRE BOARD OF MEDICINE

The Board is constituted and established by an act of the New Hampshire Legislature. N.H. Rev. Stat. §§ 329:2-9-g. It is "an administratively attached agency, under RSA 21-G:10, to the department of health and human services." N.H. Rev. Stat. § 329:2, III; *see also*, N.H. Rev. Stat. § 541-B:1, I (defining the term "agency" to include "all . . . boards [and other instrumentalities of state government….").

The State of New Hampshire has declared, "[i]n the interests of public health, safety, and welfare, and to protect the public from the unprofessional, improper, incompetent, unlawful, fraudulent, and deceptive practice of medicine, [that] it is necessary to provide laws and rules to regulate the granting and subsequent use of the privilege to practice medicine." N.H. Rev. Stat. § 329:1-aa. Thus, "[t]he primary responsibility and obligation of the board of medicine is to protect the public." *Id.* Among other things, the Board "[e]valuate[s] persons who apply for the authority to practice medicine in New Hampshire and [grant] license[s] to those who are found qualified" under [prescribed] standards…." N.H. Rev. Stat. § 2, II(a). Further, the

1

Board "[i]nvestigate[s] and evaluate[s] existing licenses … and [may] commence disciplinary action[s] concerning licensees…." N.H. Rev. Stat. § 2, II(b). Finally, as succinctly put by the Third Circuit in a case commenced by the very same plaintiff, "[t]he New Hampshire Board of Medicine, located in Concord, New Hampshire, is authorized to take action only regarding the practice of medicine in New Hampshire." *Isaacs v. Arizona Bd. Of Regents*, 608 Fed. Appx. 70, 75 (3d Cir. 2015).

As an agency of the State of New Hampshire, the Board enjoys sovereign immunity from suit. *See* N.H. Rev. Stat. § 99-D:1. New Hampshire has provided a limited waiver of sovereign immunity for claims of a type not relevant to the instant case. *See* N.H. Rev. Stat. § 541-B:1, *et seq.* (*i.e.*, "[b]odily injury, personal injury, death or property damages"). Such claims may only be brought in the New Hampshire Board of Claims or the New Hampshire Superior Court. N.H. Rev. Stat. § 541-B:9.

Claims against the Board are further curtailed under N.H. Rev. Stat. § 329:17, IX, which provides that "[n]o civil action shall be maintained against the board or any member of the board or its agents or employees with regard to any action or activity taken in the performance of any duty or authority established by [that] chapter," including but not limited to the imposition of disciplinary actions and remedies.

## II.    PLAINTIFF'S ALLEGATIONS

The thrust of plaintiff's allegations against the Board are that it was provided with certain disciplinary records by Defendant Dartmouth-Hitchcock Medical Center, a New Hampshire entity, and that such records, which contained false statements, were supposed to be held under seal by USC Keck School of Medicine. The plaintiff alleges that the Board, in turn, published those records on the Internet in mid-2014 via what plaintiff declares was a fake order which stated, among other things, that the records had never been sealed. According to the plaintiff, he became aware of this issue on or about June 2015. Complaint ¶¶147-48, 195.

The plaintiff has presented four counts against the Board on these allegations: intentional infliction of emotional distress (Count III), intentional interference with

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

2

contractual relations (Count VI), a violation of the federal RICO statute (Count VII), and an Eighth Amendment claim brought via 42 U.S.C. § 1983 (Count IX). As noted *supra*, the matter is now before the Court on a motion to vacate a default entered by the Clerk (ECF Doc. # 53) on August 28, 2019. *See* Fed. R. Civ. P. 55(a), (c).

## THE STANDARD OF REVIEW

"The Federal Rules provide that a 'court may set aside an entry of default for good cause….'" *U.S. v. Signed Personal Check No. 730 of Yubran S. Mesle*, 615 F.3d 1085, 1091 (9th Cir. 2010) (hereinafter "*Mesle*") (quoting Fed. R. Civ. P. 55(c)). "To determine 'good cause', a court must 'consider[ ] three factors: (1) whether [the party seeking to set aside the default] engaged in culpable conduct that led to the default; (2) whether [it] had [no] meritorious defense; or (3) whether reopening the default … would prejudice' the other party." *Id.* (quoting *Franchise Holding II v. Huntington Rests. Group, Inc.,* 375 F.3d 922, 925-26 (9th Cir. 2004)). "This standard, which is the same as is used to determine whether a default judgment should be set aside under Rule 60(b), is disjunctive, such that a finding that any one of these factors is true is sufficient reason for the district court to refuse to set aside the default." *Id.* "Crucially, however, 'judgment by default is a drastic step appropriate only in extreme circumstances; a case should, whenever possible, be decided on the merits.'" *Id.* (quoting *Falk v. Allen,* 739 F.2d 461, 463 (9th Cir. 1984)).

"Additionally, '[w]hile the same test applies for motions seeking relief from default judgment under both Rule 55(c) and Rule 60(b), the test is more liberally applied in the Rule 55(c) context,'" as in this case. *Mesle*, 615 F.3d at 1091 n. 1 (quoting *Cracco v. Vitran Exp., Inc.,* 559 F.3d 625, 631 (7th Cir.2009) (quotations and citations omitted)). "This is because in the Rule 55 context there is no interest in the finality of the judgment with which to contend." *Id.*

"Good cause" exists to set aside a clerk's entry of default as void when default was entered, as here, in the absence of personal jurisdiction, including that conferred by proper service of process. *See Mason v. Genisco Tech. Corp.,* 960 F.2d 849, 851 (9th

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

3

Cir. 1992) (holding that a "default judgment is void" in the absence of proper service); *accord James v. Scribner,* 415 Fed. Appx. 835, 836 (9th Cir.2011); *see also Banks v. ACS Educ.,* No. 10cv1886–BTM (CAB), 2011 WL 811601, at * 1 (S.D. Cal. Mar. 2, 2011) (unpublished) ("Improper service of the complaint presents good cause to set aside entries of default."); *Warren v. City of Grass Valley,* No. 2:10–CV–1650–JAM– EFB, 2011 WL 596707, at 1–2 (E.D. Cal. Feb.9, 2011) (unpublished) (setting aside entry of default on the basis of insufficient evidence of proper service of process); *Arthur Court Designs, Inc. v. Jensen,* No. C–09–0584 EMC, 2009 WL 2157544, at *4 (N.D. Cal. July 20, 2009) (unpublished) (same); *Van Dyke v. N. Leasing Sys., Inc.,* No. CIV.S. 07–1877 FCD GGH PS, 2009 WL 1396193, at *3 (E.D. Cal. May 14, 2009) (unpublished) ("The court finds that NLS has shown good cause for setting aside the clerk's entry of default due to defective service."), *adopted by* 2009 WL 2044254 (E.D. Cal. July 13, 2009); *cf., Benny v. Pipes,* 799 F.2d 489, 492 (9th Cir.1986) ("A failure to make a timely answer *to a properly served complaint* will justify the entry of a default judgment" (emphasis added).).

"Good cause" to set aside an entry of default also exists where a court lacks subject matter jurisdiction, as in the case where, as here, a citizen of Pennsylvania, unmindful of the Eleventh Amendment, seeks to prosecute an action against a sovereign state in this federal court. *See, e.g.*, *Polaski v. Colo. Dept. Transp.*, 198 Fed. Appx. 684, 685, 2006 WL 2147526, at *1 (10th Cir. Aug. 2, 2006) ("a lack of subject matter jurisdiction constitutes good cause for setting aside an entry of default"); *O'Connor v. Florida Bar*, 2006 WL 8444518, at * 2 (D.N.M. Feb. 13, 2006) ("Lack of subject matter jurisdiction constitutes 'good cause' for Fed. R. Civ. P. 55(c) purposes."); *see also* Fed. R. Civ. P. 12(h)(3) ("If the court determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the action.").

/ / /

/ / /

/ / /

4

AKERMAN LLP

601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

# ANALYSIS

**A.    "Good Cause" Exists to Set Aside the Default Because Service of Process Was Not Properly Made.**

In this case, service of process was not proper for several reasons.  First, Federal Rule of Civil Procedure 4(m) provides that "[i]f a defendant is not served within 90 days after the complaint is filed, the court – on motion or on its own after notice to the plaintiff – must dismiss the action without prejudice against that defendant or order that service be made within a specified time."  This action was filed on March 18, 2019, and a Summons naming the Board was issued the same day.  *See* Complaint (ECF Doc. # 1); Summons (ECF Doc. # 7).  The plaintiff asserts, via his August 25 Application for Entry of Default Against NH Board of Medicine (ECF Doc. # 47), that the Board "was served pursuant to Rule 4 of the Federal Rules of Civil Procedure on 6/21/2019," five (5) days after the Summons expired or, put differently, five (5) days after Fed. R. Civ. P. 4(m) commanded the dismissal of this lawsuit, without prejudice, as to the Board.  Service of process was therefore defective and, *at minimum*, "good cause" exists to set aside the entry of default.

Second, Federal Rule of Civil Procedure 4(j) provides that "[a] . . . state-created governmental organization [like the Board] that is subject to suit must be served by: (A) delivering a copy of the summons and of the complaint to its chief executive officer; or (B) serving a copy of each in a manner prescribed by that state's law for serving a summons or like process on a defendant.  New Hampshire law does not prescribe a method for serving the State or its agencies.  As the leading treatise on New Hampshire civil practice and procedure explains:

> Some statutes that specifically authorize actions against officers, boards, commissions, and agencies specify the person to be served and the mode of service.  No general statute, however, provides for service in cases not specifically authorized.  Although many forms of action are still barred against the state by the doctrine of sovereign immunity, some general principles may be set forth for service of process in aid of those that are not.  They are discussed in this part.

50120157;1

AKERMAN LLP

601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Gordon J. MacDonald, Weibusch on New Hampshire Civil Practice and Procedure § 10.19 *Service of Process on State Government Officials and Agencies—Generally* (4th Ed. 2014).  That treatise further specifies that:

> In the absence of a statute declaring otherwise, an agency, board, or commission of state government has no existence separate from the rest of the branch of government of which it forms a part and cannot be analogized to a corporation for the purpose of determining an appropriate method of service.  When an agency is the named defendant, the chief executive officer of that agency should be served in-hand during the business hours of that agency and at a place where the agency is then performing official functions.  When a board or commission is the defendant, every member of the board or commission and its secretary should be served, if possible, in the board or commission's office during working hours, but in any event in-hand at times and places where a member may be regarded as exercising his or her office.

*Id.* § 10.22 *Service of Process on Agency, Board, or Commission.*

Only the New Hampshire Department of Justice, as the legal representative of "the state and its executive branch agencies in all civil legal matters," N.H. Rev. Stat. § 21-M:2, II(a), has the authority to accept service of process on behalf of state boards and agencies.  *See* MacDonald, Wiebusch on New Hampshire Civil Practice and Procedure § 10.24 *Accepting Service of Process* ("The attorney general, his or her deputy, and assistants are the only officers of state government authorized to represent state officials, employees, agencies, boards, and commissions in court.  In that capacity, they have the same authority as any private attorney to agree to accept service of process on behalf of their clients.").

In short, in New Hampshire, no general statute exists for serving the State, including its boards, agencies, or committees.  The default rule, consistent with Fed. R. Civ. P. 4(j), is to serve the chief executive officer of the board (in this case, the president of the Board of Medicine) or to serve every member of the board and its secretary.  The proof of service affidavits filed with this Court do not show that occurred in this case.  ECF Doc. #35 at 1, 3.  Rather, the proof of service affidavits indicate that the lawsuit had allegedly been left with "Peggy Berube, License Clerk, New Hampshire Board of

50120157;1

AKERMAN LLP
60 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

Medicine." No provision of New Hampshire law designates or authorizes the "License Clerk" to receive or accept service of process on behalf of the Board.

As importantly, Peggy Berube, License Clerk for the Board, has no recollection of interacting with someone who was purportedly serving a lawsuit, on June 21, 2019.[1] *See* Declaration of Peggy Berube in Support of Motion to Vacate Default Judgment ("Berube Decl.") ¶ 4. Ms. Berube has never represented to anyone that she is authorized by law to accept service of process on behalf of the New Hampshire Board of Medicine. *Id.* ¶ 3. Ms. Berube has never had an interaction with someone who now states that on or about June 21, 2019, he entered the Board's Office and asked (a) if she was designated by law to accept service of process on behalf of the New Hampshire Board of Medicine, *id.* ¶ 5, or (b) about her age, ethnicity, weight, or height. *Id.* ¶ 6. In fact, as of June 21, 2019, Ms. Berube was not 40 years old and did not weigh 140 pounds. *Id.*

The only document in the New Hampshire Board of Medicine's files, which Penny Taylor, the Board's administrator, discovered on July 29, 2019, states in the proof of service that Mr. Vaughan had "personally served the summons on the individual [NH Board of Medicine] at (place) 121 South Fruit St., Ste 304." Declaration of Penny Taylor in Support of Motion to Vacate Default ¶ 3 & Ex. A. That document makes no reference to serving Peggy Berube and contains no additional comments about Ms. Berube. That proof of service affidavit was executed by Mr. Vaughan on June 21, 2019, a different day than the proof of service affidavits filed with this Court. *See* ECF Doc. #35 at 1, 3 (referencing an affidavit execution date of June 25, 2019). In any event, leaving a summons generally with staff at the office of a state board is not a legally recognized form of service of process under Federal Rule of Civil Procedure 4(j) or

[1] The signed proof of service affidavits (ECF Doc. #35 at 1, 3) would seem to indicate that Mr. Vaughan allegedly served Ms. Berube because he signed those affidavits; however, the top portion of the proof of service on ECF Doc. #35 at 3 appears to have been filled out by someone other than Thomas Vaughan based on the handwriting.

1  state law.  As discussed *supra*, the chief executive officer must be served or, at the very

2  least, the members of the board itself.

3          Additionally, the Board does not possess a version of the summons and proof of

4  service filed with this Court (ECF Doc. #35 at 2-3) that specifies the time, place, and

5  mode of service on Peggy Berube at the New Hampshire Board of Medicine; nor is

6  there any law authorizing Thomas Vaughan or The Nason Group, LLC to serve process

7  in the State of New Hampshire.  The proof of service affidavits submitted to this Court

8  similarly do not identify a state law that authorizes Thomas Vaughan or the Nason

9  Group LLC to serve writs or legal process commencing a court action in the State of

10  New Hampshire.

11          In New Hampshire, even under the general service of process statutes that apply

12  to inhabitants and other corporate entities but not the State, process initiating an action

13  must be served by sheriff, deputy sheriff, or another person authorized by law to make

14  such service.  As the New Hampshire Supreme Court explained in *Adams v. Sullivan*,

15  110 N.H. 101, 103-04 (1970):

16          If [RSA 510:2] were new it could be argued that a defendant has been
         served when process has been given him or has been left at his abode
17          regardless of how it arrived.  Traditionally, however, we have required a
         more exacting  standard in this state as *Rogers v. Buchanan*, 58 N.H. 47
18          and *Duncan v. McDonough*, 105 N.H. 308 . . . demonstrate.  This is due in
         part to the fact that the statute (RSA 510:2) is to be read in conjunction
19          with RSA 509:3 and RSA 104:5 which indicate that writs are addressed to
         the sheriff in contemplation that he will serve them.

20

21  Thus, N.H. Rev. Stat. § 510:2-a requires "the sheriff, deputy sheriff, or other person

22  *authorized by law* who has made such service" to include on the writ or process at the

23  time it is served "the time, place and mode of service made upon the defendant."

24          As service of process was not been properly made, "good cause" exists to set

25  aside the default entered by the clerk.  *See Mason,* 960 F.2d at 851.

26  / / /

27  / / /

28  / / /

8

50120157;1

AKERMAN LLP
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

**B.**    **Good Cause Exists to Set Aside the Default Because, Under the Eleventh Amendment, This Court Lacks Subject Matter Jurisdiction to Adjudicate an Action Against the New Hampshire Board of Medicine.**

The Board is a sovereign state agency entitled to Eleventh Amendment immunity on all of the claims against it and meets the arm-of-state analysis applied by the Ninth Circuit.  That analysis looks to five factors:  "(1) 'whether a money judgment would be satisfied out of state funds'; (2) 'whether the entity performs central governmental functions'; (3) 'whether the entity may sue or be sued'; (4) 'whether the entity has the power to take property in its own name or only the name of the state'; and (5) 'the corporate status of the entity.'"  "To determine these factors, the court looks to the way state law treats the entity."  *Id.*

The first factor—whether a money judgment would be satisfied out state funds—is the most important.  *Id.*  In this case, any money judgment would be paid directly from the State treasury.  The Board is "an administratively attached agency to the New Hampshire Department of Health and Human Services."  N.H. Rev. Stat. § 329:2, II.  It therefore enjoys state sovereign immunity under N.H. Rev. Stat. § 99-D:1.   In furtherance of this immunity, the Legislature has specified that "[n]o civil action shall be maintained against the board or any member of the board or its agents or employees with regard to any action or activity taken in the performance of any duty or authority established by this chapter."  N.H. Rev. Stat. § 329:17, IX.

As discussed *supra*, suits for "[b]odily injury, personal injury, death or property damages" that may be brought against the Board can only be maintained under N.H. Rev. Stat. Chapter 541-B [New Hampshire Board of Claims].  A successful suit against the Board under N.H. Rev. Stat. Chapter 541-B results in a money judgment against the state treasury, N.H. Rev. Stat. § 541-B:13, and those judgments are capped at a certain point to protect the public fisc.  N.H. Rev. Stat. § 541-B:14.  Similarly, if a breach of contract action for money damages were brought against the Board, the resulting

50120157;1

1    judgment would be paid from "the appropriation under which the contract was entered

2    into; provided, that if there is not sufficient balance in said appropriation, the attorney

3    general shall present said claim to the general court[2] for the requisite appropriation."

4    N.H. Rev. Stat. § 491:8.  Consequently, the first factor is met.

5           The second factor is also met: the entity performs central government functions.

6    Specifically, the State has declared that:

7           The practice of medicine is a privilege granted by the people according to
            the laws enacted by the legislature, and not a natural right. In the interests
8           of public health, safety, and welfare, and to protect the public from the
            unprofessional, improper, incompetent, unlawful, fraudulent, and
9           deceptive practice of medicine, it is necessary to provide laws and rules to
            regulate the granting and subsequent use of the privilege to practice
10          medicine. The primary responsibility and obligation of the board of
            medicine is to protect the public.

11

12   N.H. Rev. Stat. § 329:1-aa.  The Board's duties include evaluating persons who seek to

13   practice medicine in the state to ensure they are qualified, commencing disciplinary

14   action against licensees who do not comply with the standards established under the

15   chapter, assessing, compromising, and collecting civil penalties against persons who

16   engage in the unauthorized practice of medicine, and establishing fees for licenses and

17   renewal of licenses.  *Id.* § 329:2.  The Board has also been charged by the Legislature

18   with establishing, among other things, the qualifications of applicants for initial and

19   continued licensure, the procedural and substantive requirements for the reinstatement

20   of licenses, and the ethical and professional standards required to be met by each holder

21   of a license to practice medicine in the state.  *Id.* § 329:9, II, IV-V.

22          The Board is also closely controlled by the State.  Its members are appointed by

23   the governor with the advice and consent of the executive council for a period of 5 years

24

25   _____

26   [2] In New Hampshire, the General Court is the Legislature. *See* N.H. Const. Part II,
     Articles 3 ("The senate and house shall assemble biennially on the first Wednesday of
27   December for organizational purposes in even numbered years, and shall assemble
     annually on the first Wednesday following the first Tuesday in January, and at such
28   other times as they may judge necessary; and shall dissolve and be dissolved at 12:01
     A.M. on the first Wednesday of December in even numbered years and shall be styled
     THE GENERAL COURT OF NEW HAMPSHIRE.").

AKERMAN LLP
60 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

50120157;1

10

and may only be removed by the governor and executive council for malfeasance, misfeasance, or nonfeasance. N.H. Rev. Stat. § 329:4, II.    In the event the Board requires additional funding beyond budgeted appropriations to perform its functions through the retention of expert witnesses, special legal counsel, or other qualified persons to assist in an investigation or adjudicatory proceeding, "the board through the office of professional licensure and certification may request the governor and council to expend funds not otherwise appropriated on the condition that such funds be recovered in the board's next budget at the rate of 125 percent." N.H. Rev. Stat. § 329:18, II. Consequently, the Board, in regulating the practice of medicine within New Hampshire, performs a central government function and is closely controlled by the executive branch of State government.

Third, the Board may not be sued because it enjoys sovereign immunity, N.H. Rev. Stat. § 99-D:1, as well as enhanced statutory immunity, N.H. Rev. Stat. § 329:17, IX. The Board also cannot freely sue like a private actor. Rather, its authority to sue is limited to applying for injunctions in the New Hampshire superior court to restrain the unauthorized practice of medicine. N.H. Rev. Stat. § 329:17-b. The attorney general represents the Board in such actions. *Id.*

Fourth, the Board's enabling legislation does not reveal that the Board has the power to take property in its own name as opposed to in the name of the State.

Fifth, the Board does not have an independent corporate status. It is "merely an agency of the state without an identity that is separate from the state."

Accordingly, all of the above factors establish that the New Hampshire Board of Medicine is an arm of the State of New Hampshire and is entitled to share in the State's Eleventh Amendment immunity. *Obi v. Exeter Health Resources, Inc.*, 2018 WL 5905125 at *3 (D.N.H. Oct. 29, 2018) ("The New Hampshire Board of Medicine is a state agency. Claims for damages and injunctive relief against state agencies are barred by the Eleventh Amendment.") (citing *Town of Barnstable v. O'Connor*, 786 F.3d 130, 138 (1st Cir. 2015)).

11

AKERMAN LLP

601 W. FIFTH STREET, SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

In this case, the plaintiff is presently asserting four claims against the New Hampshire Board of Medicine, a 42 U.S.C. § 1983 claim, a Racketeer Influenced and Corrupt Organizations Act ("RICO") claim, and two state law tort claims. It is well settled that "[a]bsent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) (internal quotation omitted); *see also Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 101-02 (1984) ("And, as when the State itself is named as the defendant, a suit against state officials that is in fact a suit against a State is barred regardless of whether it seeks damages or injunctive relief."). The New Hampshire Board of Medicine has not waived Eleventh Amendment immunity. Additionally, the RICO statute does not waive the State's Eleventh Amendment immunity. *See, e.g.*, *Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir.1988) (finding that RICO does not override a state's sovereign immunity); *Committee to Protect Our Agricultural Water v. Occidental Oil & Gas Corp.*, 235 F. Supp. 3d 1132, 1159-60 (E.D. Cal. 2017) ("Pursuant to the Eleventh Amendment, state agencies and officials are generally immune from liability under RICO and 42 U.S.C. § 1983.").

As this Court is without subject matter jurisdiction to adjudicate the instant claim against the New Hampshire Board of Medicine, "good cause" exists to set aside the default entered by the clerk. *See Polaski*, 198 Fed. Appx. at 685, 2006 WL 2147526, at *1.

## C.    The New Hampshire Board of Medicine Did Not Engage In Culpable Conduct.

"The Ninth Circuit Court has 'typically held that a defendant's conduct was culpable for purposes of the [good cause] factors where there is no explanation of the default inconsistent with a devious, deliberate, willful, or bad faith failure to respond.'" *Yan v. General Pot, Inc.*, 78 F. Supp. 3d 997, 1004 (N.D. Cal. 2015) (quoting *TCI Group Life Ins. Plan v. Knoebber*, 244 F.3d 691, 698 (9th Cir. 2001), *overruled on other grounds by Egelhoff v. Egelhoff ex rel. Breiner*, 532 U.S. 141 (2001)). "Thus, 'a

12

defendant's conduct is culpable if he has received actual or constructive notice of the filing of the action and intentionally failed to answer.'" *Id.* (quoting *TCI Group Life Ins. Plan*, 244 F.3d at 697). "In this context, 'intentionally' means that 'a movant cannot be treated as culpable simply for having made a conscious choice not to answer; rather, to treat a failure to answer as culpable, the movant must have acted with bad faith, such as an intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process.'" *Mesle*, 615 F.3d at 1092–93 (quoting *TCI Group Life Ins. Plan*, 244 F.3d at 697).

In this case, the Board's conduct was not culpable. The Board discovered the expired summons and proof of service approximately one month after it had been left at the agency. Taylor Decl. ¶ 3. That summons itself, with the proof of service affidavit filled out by the individual who had delivered it, reveals that the method of service did not conform to Federal Rule of Civil Procedure 4(j). On August 1, 2018, the plaintiff filed a proof of service with the Court purporting to have made service in a different manner. ECF Doc. #35 at 1-3. There exists a substantial question as to the factual validity of those proof of service affidavits, see Berube Decl. ¶¶ 3-7, and those affidavits themselves also do not demonstrate a method of service that conforms to Federal Rule of Civil Procedure 4(j) or state law. Nonetheless, after assessing these legal documents and the Board's potential legal obligations, the New Hampshire Board of Medicine, through the New Hampshire Attorney General's Office, retained local counsel to appear in the case. The Board's conduct was not "a devious, deliberate, willful, or bad faith failure to respond." Nor was it the Board's "intention to take advantage of the opposing party, interfere with judicial decision-making, or otherwise manipulate the legal process." Accordingly, the New Hampshire Board of Medicine has not engaged in culpable conduct.

**D. The New Hampshire Board of Medicine Has Meritorious Defenses.**

The Board has many meritorious defenses, including but not limited to the following:

50120157;1

First, and for the reasons explained in detail above, service of process was not properly made on the Board.  The summons had expired and the case should have been dismissed, without prejudice, as to the Board, under Federal Rule of Civil Procedure 4(m).  Service of process was also not made in accordance with Federal Rule of Civil Procedure 4(j).

Second, personal jurisdiction, both general and specific, does not exist over the New Hampshire Board of Medicine in this action.  The complaint pleads no facts that would show, directly or by inference, that the New Hampshire Board of Medicine has engaged in conduct with any connection to California.  Rather, according to the original, amended and seconded amended complaints, all of the Board's alleged conduct occurred in New Hampshire.  Additionally, the plaintiff's complaint does not reveal with respect to his RICO claim that there is no other district in which a court would have personal jurisdiction over all of the alleged co-conspirators.  *See Butcher's Union Local No. 498, United Food & Commercial Workers v. SDC Inv., Inc.*, 788 F.2d 535, 539 (9th Cir. 1986) ("For nationwide service to be imposed under section 1965(b), the court must have personal jurisdiction over at least one of the participants in the alleged multidistrict conspiracy and the plaintiff must show that there is no other district in which a court will have personal jurisdiction over all of the alleged co-conspirators.").

Third, the Board is a sovereign state agency entitled to Eleventh Amendment immunity on all of the claims against it, including the Section 1983 claim and the RICO claim. *See, e.g.*, *Puerto Rico Aqueduct & Sewer Authority v. Metcalf & Eddy, Inc.*, 506 U.S. 139, 144 (1993) ("Absent waiver, neither a State nor agencies acting under its control may be subject to suit in federal court." (internal quotation omitted)); *Pennhurst State Sch. & Hosp. v. Halderman,* 465 U.S. 89, 100 (1984); *Bair v. Krug*, 853 F.2d 672, 674–75 (9th Cir.1988) (RICO does not override a state's sovereign immunity).

Fourth, N.H. Rev. Stat. § 329:17, IX is a form of statutory immunity that prohibits one or more claims against the Board.

14

Fifth, the state law claims against the Board cannot be brought in federal district court.  They may only be brought in the New Hampshire Board of Claims or in the superior court of the State of New Hampshire.  N.H. Rev. Stat. § 541-B:9.

Sixth, the plaintiff's complaint fails to state a cause of action against the Board. The term "person" in 42 U.S.C. § 1983 does not extend to sovereign state entities like the Board, and, in any event, the plaintiff's Eighth Amendment cruel and unusual punishment claim fails because that protection extends only to criminal punishment. *See Ingraham v. Wright*, 430 U.S. 651, 666-68 & n.36 (1977) (explaining that the cruel and unusual punishment clause applies to criminal punishments and holding it does not apply to disciplinary corporal punishment in public schools).  The plaintiff's RICO claim does not allege a plausible violation of the statute against the Board.

Upon an Order setting aside the default, it is the intention of the Board to file a motion to dismiss on each of these bases.

### E.    Lifting The Default Will Not Prejudice The Plaintiff.

Finally, lifting the clerk's default will not prejudice the plaintiff.  This case is in its early stages.  Motions to dismiss have been filed and have been countered by amended complaints.  Most recently, the plaintiff filed a second amended complaint in response to renewed motions to dismiss.  Accordingly, the plaintiff will suffer no prejudice at this juncture if the clerk's default is set aside.

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

15

50120157;1

## III.    CONCLUSION

"Good cause" exists to set aside the default because (a) service of process was not properly made, (b) under the Eleventh Amendment, this Court is without subject matter jurisdiction to adjudicate plaintiff's claim against the New Hampshire Board of Medicine, (c) the default was not the consequence of "culpable" conduct on the part of the Board, (d) the Board has numerous meritorious defenses, and (e) setting aside the default will not prejudice the plaintiff. *See Mesle*, 615 F.3d at 1091 (9th Cir. 2010).

DATED: September 12, 2019          Respectfully submitted,

**AKERMAN LLP**


By: */s/ Kanika D. Corley*
     Kanika D. Corley
     Attorneys for Defendant
     NEW HAMPSHIRE BOARD OF MEDICINE

**AKERMAN LLP**
601 W. FIFTH STREET SUITE 300
LOS ANGELES, CALIFORNIA 90071
TEL.: (213) 688-9500 – FAX: (213) 627-6342

50120157;1